## STATE v. BODIE.

1. Under an indictment for murder it is competent to show the relations that had previously existed between the parties, and for this purpose the record of a former prosecution by the deceased against this defendant for malicious mischief was admissible in evidence.

2. Where one is indicted for murder, but convicted only of manslaughter,

error in admitting testimony tending to show malice on his part would seem to be immaterial.

3. Where a witness says he has "no recollection" of saying that which really amounted to only an expression of opinion on his part as to what the deceased intended to do, testimony to prove that he did so say is incompetent.

4. It seems that there may be cases in which uncommunicated threats by the deceased would be competent evidence on behalf of the defendant.

5. Where requests to charge are so framed as to cover only a case where the accused went to the place of the homicide on his own land for the purpose of removing a trespasser, it is not error for the judge to say that the principles of law therein contained are only so applicable, particularly where he had in his general charge already sufficiently stated the law as to the doctrine of self-defence when one is upon his own premises for any lawful purpose.

6. The State is bound to prove its case beyond a reasonable doubt; the defendant must prove a special defence, such as self-defence, by the preponderance of the testimony. But if, upon the whole testimony, the jury entertain a reasonable doubt as to any material point of the case (as, *e. g.*, where lies the preponderance of the testimony upon the special defence), the defendant is entitled to the benefit of such doubt.

7. The bald fact that the deceased presented his gun at defendant before defendant discharged the fatal shot, does not necessarily excuse the homicide ; and therefore the judge did not err in charging that if this occurred, and it was not a case of self-defence [as to which he had given full instructions], it would be sufficient to reduce the case to one of manslaughter.

8. There is no error in refusing a request to charge which ignored the distinction between a trespass on land in the possession of another, and on land owned by another, and which also ignored the effect of a license to enter—particularly where the jury had been already fully instructed as to the law applicable to such cases.

9. The reasonable doubt that the law in its mercy gives the benefit of to the accused, is not a weak or slight doubt, but a serious or strong and well-founded doubt as to the truth of the charge.

Before KERSHAW, J., Aiken, September, 1889.

This was an indictment against Nathan Bodie, charging him with the murder of Joel A. Gunter on January 25th, 1889. The homicide occurred at a point in a road on Bodie's land, where Gunter was cutting away a log which Bodie had thrown across this road. The judge charged the jury as follows:

*Gentlemen of the Jury :* I congratulate you, as well as myself, upon the approach of the determination of this painful investigation through which we have passed the last several days. It is my duty now to charge you upon the law of homicide, and it is your duty to investigate the testimony in this case, ascertaining the facts, discrediting what you believe to be untrue, and fastening in your memory what you believe to be true, and then, having ascertained the facts, apply them to the law as I shall give it to you, and then return a verdict in accordance with the facts and the law. If, in the expression of what I have to say to you, I should unfortunately, in your opinion, give rise to the belief in your mind that I am expressing an opinion upon the facts, I beg you to discard it. I have no right to an opinion upon a question of fact ; it is only upon the law that I have a right to express myself, and if I should err in the slightest particular upon that point, the Supreme Court would set it aside and this case would be tried over again, if you should find against the defendant. Therefore if I should, in your opinion, express an opinion, you will discard it from your mind altogether, and be guided by your own honest, conscientious belief, as you find it from the evidence.

In every homicide the first inquiry is, of couse, did the deceased party come to his or her death at the hand of the party charged? Sometimes this is a matter of painful investigation, but in this instance you are relieved from any further inquiry into that fact, because it is not denied that the deceased, Joel A. Gunter, came to his death at the hands of the defendant, the prisoner at the bar.

Then your inquiry will be, what was the nature of that killing? A man has been killed ; a citizen has had his life taken, and you are called upon to inquire what was the nature of that killing. Was it a crime ? If it was not a crime, the defendant will go acquitted at your hands.. If it was a crime, what was the nature of that crime ? Every homicide is either justifiable, excusable, or felonious. Justifiable homicide takes place when it is the duty of a man to take the life of another. Whenever that happens, of course there is not a crime committed. Hence he goes away justified, because he has not only done no wrong, but he has

actually done a duty when he took the life of the party.    When the sheriff, in obedience to the command of a court of competent jurisdiction, executes the sentence of the court and takes the life of a man condemned to death, the sheriff does no wrong, but he does his duty, and therefore is justified.    And justifiable homicide occurs, also, when a man takes the life of another to prevent a known felony from being committed by him.

The next subdivision or classification of homicide is excusable; where a man, though not justifiable, he is excusable in the eyes of the law, in obedience to the instincts of our nature and the weakness and infirmities of human nature; as where a man is engaged in a lawful business, without any negligence or fault in any way, happens, accidentally, without any intention or fault, to kill a man, in that case he is excused.. It is not justifiable, for it is not his duty to take life, but it is excusable homicide, and he goes acquitted of any intended homicide.    Another case of excusable homicide is homicide in self-defence.    It occurs when a man has no other probable means of saving his life or of defending his person from enormous bodily harm from one who combats against him, and upon a sudden quarrel kills the person assaulting him under necessity.    Not only is a man entitled to the benefit of the law of self-defence when he is actually in danger of his life, but when the circumstances are such as to justify a man of ordinary reason and firmness in the belief that his life is in jeopardy, and you consider the circumstances to be such as to justify that belief, then he is equally entitled to the law of self-defence, because a man here is judged by his motives, and if he honestly believes that he is obliged to take life in self-defence, and the circumstances are such as to justify that belief, then he is entitled to the law of self-defence.

Of course, in excusable homicide, as in justifiable homicide, the verdict of the jury must be "not guilty" wherever they find him to be justified in the act.    It is rested in the books upon the ground of necessity—self-defence is—that is to say, unless a man can show you that there was a necessity, or that the circumstances justified his belief that it was necessary, to take life in order to save himself from death or serious bodily harm, he is not entitled to the plea of self-defence.    It rests upon necessity,

and it is said that when two parties are engaged in a sudden quarrel and one is assaulted in such a manner as to endanger his life or person, if he can escape, he ought to escape. It is his duty under the law, as used to be said, "to retreat to the wall," the meaning of which is, to retreat unless there is more danger in retreating than standing still. Now, these are the general principles of law applicable to self-defence.

Another has no defence, called felonious, and that is the only kind of homicide that the law punishes, and that is of two classes; one is murder and the other manslaughter. Murder is the killing of a person with malice aforethought, expressed or implied. Manslaughter is the unlawful killing of a person without malice— without malice, expressed or implied. It is also defined to be a killing upon sudden heat and passion and upon provocation—that is familiar definition of manslaughter. Now, as to these two classes. The first, murder, as you know, is punished capitally; and the second class, manslaughter, is punished by imprisonment, and so forth. The distinction between them is, murder, the killing with malice; manslaughter, the killing without malice.

Malice may be defined to be an evil spirit—a depraved and wicked spirit—such as is found in a heart totally devoid of social duty and fatally bent upon mischief. In the language of some of our old books, malice is either expressed or implied. Express malice is where one person kills another with a sedate, deliberate, meant, and formed design, such formed design being evidenced by external circumstances which discover the inward intention, such as lying in wait, antecedent menacing threats, former grudges, and concerted schemes to do somebody harm. Malice is implied from any deliberate, cruel act committed by one person against another. For instance, as when a man kills another without any or without considerable provocation, the law implies malice in such a case.

I have said that manslaughter was also defined to be the killing of a person under sudden heat and passion and upon provocation. That leads me to define to you what provocation is. Now, no words, however opprobrious or offensive, will, in the eyes of the law, be sufficient provocation for a blow of any kind, much less the taking of life; but words, or menacing, threatening lan-

guage, accompanied by some act which indicates immediate intent to carry that threat into execution, will be considered sufficient provocation, but, as I said to you, not-a slight provocation; it must be a great provocation to justify the taking of human life.

Well, then, these are the principles applicable and proper to be charged to the jury in any case of homicide, but in this case there are some circumstances of a peculiar character arising from the claim of proprietorship of land and the right to use a road. Upon this subject, after considering it with some care, I have adopted the law as laid down, with some very slight modification, in the requests to charge by the defendant. These requests are based upon the supposition on their part that there was a trespass committed by the deceased, and that the object of the prisoner at the bar was to remove the trespasser, and these principles of law mostly apply only in case you find Mr. Bodie was engaged in an effort to remove a trespasser from his land. They are all based upon that supposition, that his object was to remove a trespasser. Now, if you find that, instead of that being Mr. Bodie's purpose, that there was something else; that he took that pistol, and you find in that act that he was actuated by any ill feeling towards the deceased; that that was his purpose with which he went there, expecting to have a deadly combat with him, then these propositions of law do not apply.

In all questions of this kind, where self-defence is interposed as a plea, the defendant must satisfy you, not beyond a reasonable doubt, but by the preponderance of testimony, that he is entitled to the protection of that defence. The State is bound to prove all beyond a reasonable doubt. The State is bound to prove every point against the defendant beyond a reasonable doubt, or else the State must fail to obtain a conviction. But when the matter has been established beyond a reasonable doubt, or when the matter has been established, then the defence must satisfy you by a preponderance of testimony, not beyond a reasonable doubt, but as matter of belief, that he was acting in self-defence. The preponderance of testimony means simply this: that you weigh the testimony, and if it is inclined to the one side more than the other, then that side has the preponderance. It is like weighing a thing in a balance—where the

weightiest testimony lies there is the preponderance; and there must be a preponderance of testimony in the favor of the defendant to establish his plea of self-defence, or else he fails.

As to the proprietorship of the land. In this question Mr. Murphy, the solicitor, in order to relieve you and the court of going into a protracted inquiry into the title, which would have cumbered this case unnecessarily, has admitted that the land was the property of the defendant.

. Now, as to the right of way. A man may have a right of way over the land of another. A man may have a private right of way. A single individual may have a right to pass over the land of a neighbor, which would not authorize anybody else. That is usually shown by some grants or by some muniment of title. Then there is another right of way, which establishes what is called a neighborhood road, where the party has a right to pass over the land of a proprietor going to or from certain places. That is sometimes acquired in one way and sometimes another, but the most usual way of acquiring it is by what the law terms prescription. It may be done with or without grant, but it is most usually attained by prescription, and that is where the people of a neighborhood have, for twenty years, without interruption, been accustomed to travel a particular road going to mill, a market town, or from one public road to another, or church or what not, for the purpose of the neighborhood; where they have travelled it for twenty years, then they acquire that right. The law presumes in that case that there has been a grant, but it has been lost in the course of time, and the public, the people of the neighborhood, have a right to travel that road.

It is a neighborhood road, called, also, it seems to me, without any cause, a private path, but it is a path which the public have a right to travel. And wherever a road has been travelled that way for twenty years, and the road is identically the same one from church, or one public road to another, a market town, mill, it is called a neighborhood road, which the public have a right to use, and the proprietor cannot interfere with any one travelling it when it has once acquired that character. Now, if, from the proof in this case, you should find that this road was one of that character, then Mr. Bodie, the owner of the land, could not pre-

STATE *v.* BODIE.

vent the deceased or anybody else from travelling it. It would really be as much his as anybody else's. All the neighbors would have the right to travel it. I have said the road must be continuous, that is, it must be the identical road, but a slight deviation to avoid some obstacle, so it comes out at one place and goes in at another, which are the same places, that would not defeat the right.

I charge you in accordance with the first request of the defendant, "that the deceased had no right to travel the road on the defendant's land without his consent, or unless the deceased or the public had acquired such right by prescription, and that nothing short of twenty years' continuous use can give a person or the public a prescriptive right over another man's land." In connection with that fact, I desire to say, that, whereas, to give a man the right of way, requires a grant or fee to right of way to a man over the land of another; yet, if there was a parol permission to use the road, a parol license or permission to use the road given by Mr. Bodie to the deceased, why, Mr. Bodie could not treat him as a trespasser until he revoked that permission. It might not have the effect of giving any established absolute legal right to the road, but it would amount to such a license to travel the road, that it could not be defeated in that case.

2. "That if the jury believe that the deceased went upon the defendant's land against his notice and consent, and that deceased had no legal right on said premises, then it was the duty of the deceased to leave said land when ordered so to do by the defendant, and if he refused, the defendant had a legal right to use such force as was necessary to eject the deceased, and if, in doing so, the deceased resisted and assaulted the defendant in such a manner as would cause a reasonable person of ordinary firmness to believe that it was necessary to kill deceased in order to save his own life, or his person from serious bodily harm, then defendant had a right to repel such assault, even to the extent of taking the life of the deceased."

3. "That a person has the right to approach any one committing a trespass upon his land, and to use such force as is necessary to eject such person, and if, while so doing, he is assaulted by the trespasser, then he is not in this case bound to flee, but he may

stand his ground against such trespasser and repel his assault, and if the fierceness of the assault made by the trespasser renders it necessary that his life be taken in order that the defendant might save his own life, then the defendant might do so, and he will be excused under the plea of self-defence."

As I have said to you, in order that, ordinarily, a man may avail himself of the laws of self defence, he must show that he used every probable means of escaping the necessity of taking life; he must even retreat to the wall. But when he is on his own premises, he may stand his ground. He is not obliged to retreat, but may stand his ground and repel force by force, and not retreat, and that is the chief difference between being attacked on his own premises and somewhere else.

4. "A person in the rightful possession of lands may lawfully approach any person wrongfully upon the same, and may order the person trespassing to leave or quit the land, and, in the event of a refusal to do so, may use such force as may be necessary to eject such trespasser; and if such person is resisted by force in the attempt to eject such trespasser, he may legally defend himself and repel force by force, using only such force as the fierceness of the attack may render necessary to defend himself."

5. "The law justifies a man in repelling by force, in the defence of his person, habitation, or property, against one who manifestly intends and endeavors by violence to commit a known felony on either, he is not obliged to retreat, but may pursue his adversary till he finds himself out of danger; and if, in a conflict between them, he happens to kill his adversary, such killing is excusable. The right of self-defence of this kind is founded on the law of nature." I decline to charge the sixth request in the language in which it is couched.

I charge you the seventh. "7. A person who is the owner of land has the right to the quiet and peaceable enjoyment of the same, and if another enters upon the same against the notice of the owner, he becomes a trespasser, and the owner has the right first to order him to leave; if he refuse to leave, then the owner of the land may put his hands upon him lightly to remove him; if he resists, and in return makes an aggressive assault upon the owner with a deadly weapon, and in such a manner as to cause a

person of ordinary firmness to apprehend death, then the owner of the land may strike back in his defence to the extent of taking the life of such trespasser."

8. "That if a person is assaulted by one who has threatened to kill him, in such a manner as to give him reasonable cause to believe that such threat will be carried out, he is not bound to run and escape in this particular instance, thus increasing his danger by encouraging his assailant to repeat the attempt, when he will, perhaps, be less prepared to resist."

9. "That while the law presumes malice from the mere fact of intentional killing, yet when all the facts are brought out in the evidence, then there is no room for presumption, and the State affirming malice must prove it." That is, proving such circumstances as will justify the belief of the existence of malice beyond a reasonable doubt.

10. "That if the jury believe from the evidence that the defendant killed the deceased under circumstances calculated to excite the fears of a reasonable man of ordinary firmness that it was necessary to take the life of the deceased in order to save his own life, or his person from serious bodily harm, and that he acted really under the influence of these fears, and not from revenge, and such circumstances were brought about without fault on his part, then he is not guilty."

And the eleventh, which I have subjected to considerable pruning: "11. That if, from the evidence, the jury entertains a reasonable doubt as to the guilt of the defendant, then it is the duty of the jury to give the defendant the benefit of such reasonable doubt, and acquit him upon the subject of reasonable doubt." It is not every fanciful doubt that is a reasonable doubt. The doubt that the law terms a reasonable doubt has been variously defined, and has been defined by our Supreme Court, and I have adopted their definition. "It is a strong, substantial, well founded doubt, founded upon the evidence."

If you possess such a doubt upon any question of guilt arising in the case, you will give the benefit of that doubt to the defendant. If, for instance, you are in doubt between whether this case is manslaughter or murder, as to which it was, a reasonable doubt, I mean, then he should be found guilty of manslaughter

rather than murder; and if, upon the whole case, after conscientiously considering the matter, you consider the prisoner is not guilty of any offence at all; that his plea of self-defence has been sustained; that his conduct was excusable, why, then, you will find him not guilty.

But if you find, gentlemen, that he was acting from malice; if you find that he went there and carried out the threats which he is said to have made, upon which you have heard some testimony, and he actually had ill-will or malice, or anything of that kind, your duty would be to convict him of murder. In this case, your verdict would simply be "guilty." If you find that he had no malice, but did not act strictly in self-defence, as I have defined it to you, and he is not, therefore, excusable, then the question arises, whether a verdict of manslaughter will be proper. Any assault with a deadly weapon will be sufficient provocation, especially a gun. And if you find that the deceased did present his gun to the prisoner before he shot him, and it is not self-defence, why, then, it would be sufficient to reduce it to manslaughter, if he is not justified under the plea of self-defence. A trespass upon a man's land may be sufficient to reduce the killing from murder to manslaughter; but it would not be every slight trespass that would be sufficient to reduce it from murder to manslaughter.

You will take the case and consider it conscientiously. I don't say that you are not to consider the sympathies which cluster around this case on both sides. I would not like to meet with a jury in this country that was not alive, and keenly alive, to proper sympathies; but, at the same time, I say to you, that you must not let your sympathies turn the scales against your judgment; you are to pronounce your honest judgment of what is true, and not on your sympathies; nor on the consideration, either, that there are a great many murders committed in the land, and people go unwhipped of justice. It is to be determined by the circumstances of the case, and your honest conviction as to what is the truth in this case. When you reach that, you will find a verdict. That is what the law requires.

I want to say, also, that this case, as you have been made aware, has been tried before and a mistrial made. I think it greatly to be deprecated; and I do not think that you should come to the

conclusion that it is impossible for you to agree until after you have conscientiously exhausted every means of agreeing. It is greatly against the interests of the country having these trials going from court to court, and running your county to expense, and harrowing up the feelings of the community. The object of the jury should be to try and agree, but, at the same time, you must do whatever is right.

The jury found the defendant guilty of manslaughter, but recommended him to the mercy of the court. The judge sentenced the defendant to imprisonment for five years in the penitentiary at such labor as he might be able to perform. Defendant appealed.

*Messrs. Croft & Chafee*, for appellant.

*Messrs. Murphy*, solicitor, and *Henderson Bros.*, contra.

June 19, 1890. The opinion of the court was delivered by

MR. JUSTICE McIVER. Under an indictment for the murder of J. A. Gunter, the defendant was convicted of manslaughter, and appeals upon the several grounds set out in the record.

The first exception is as follows: "1. Because his honor erred in allowing the State to put in as evidence the record in the case of the State *v.* Nathan Bodie, indictment for malicious mischief." The testimony tended to show that there had been bad blood between the parties for several years, each making violent threats against the other; and at the conclusion of the testimony of one of the witnesses introduced by the State, for the purpose of showing a threat made by the prisoner against the deceased—in which the witness said the prisoner stated that the deceased had falsely accused him of shooting his mule—it was proposed, upon the part of the State, to introduce the record for the purpose of showing that deceased had prosecuted the prisoner for malicious mischief in shooting his mule. Upon objection being made, counsel for the State stated that the purpose was simply to show that deceased had taken out a warrant against defendant for shooting his mule; whereupon the court ruled that the testimony was admissible, for the purpose of showing the feeling between the parties, and that

the record was the best evidence of the fact. Counsel for the prisoner then insisted that if the record is offered, they were entitled to the benefit of showing from it what was the result of the prosecution; to which the court assented, saying that if any part of the record is offered in evidence, the whole of it must go in. The record, as presented, consisted of the affidavit of the prosecutor and the warrant of arrest issued thereon, together with recognizance of the defendant and the testimony of the State's witnesses taken down in writing by the trial justice, and the indictment, together with the finding of the grand jury endorsed thereon, upon which a *nolle prosequi* was entered.

It cannot be doubted, that in a case of this kind it is competent to introduce testimony tending to show the relations previously existing between the parties (*State* v. *Senn*, 32 S. C., 392); and if it was competent to show that one of these parties had instituted a prosecution against the other, surely the best evidence of that fact was the record; and that was just what the court ruled in this case. But, in addition to this, inasmuch as the defendant was not convicted of murder, but only of manslaughter, thereby ignoring the ingredient of malice, it would be somewhat difficult to understand how the testimony in question would be relevant to the charge of which the defendant was convicted, and, therefore, even if its admission could be held incompetent, its reception could not be regarded such an error of law as would warrant this court in reversing the judgment.

The second exception imputes error in excluding the evidence of Mrs. Manly Johnson, introduced for the purpose of contradicting John T. Arthur, a witness for the State. It seems that when Arthur was on the stand as a witness for the State, he was asked, on his cross-examination, whether he had not made certain statements to J. M. Johnson in the presence of his wife, Mrs. Manly Johnson, which, it is claimed, tended to show threats on the part of the deceased to use the road over prisoner's land at all hazards, which it was claimed the prisoner had forbidden him from using. But upon examining the testimony as set out in the "Case," it is apparent that the point upon which it was proposed to contradict Arthur was wholly irrelevant and incompetent to the issue which was being tried, for at most it only amounted to an expression of

9—33

Arthur's opinion as to what the deceased intended to do, and did not even purport to be a declaration made by the deceased. In addition to this, it does not appear that Arthur denied the statement which it was sought to attribute to him, but simply said that he had no recollection of using any such language. It is clear, therefore, that the proposed testimony of Mrs. Manly Johnson was properly excluded, not, however, upon the ground that the threat, which it was supposed it would establish, had never been communicated to the prisoner, for there may be cases in which uncommunicated threats might be competent. Upon this subject, see *Wiggins* v. *People*, 93 U. S., 465, and the cases therein cited.

The third exception was very properly abandoned on the argument here, as it is very clear that it could not be sustained, and it is not necessary, therefore, to consider or state it.

All the remaining exceptions complain of errors in the charge of the Circuit Judge, and in his refusal to charge certain requests in the form in which they were submitted, and we think they are best answered by the charge of his honor, Judge Kershaw, which is set out in the record, and which should be incorporated in the report of this case ; for it seems to us that the law applicable to the several views which might be taken of the facts, is most fully, clearly, and correctly set forth in the charge. But while it may be difficult, if not impossible, to add anything to what is there so well said, perhaps it may be our duty to consider the several exceptions in their order, and this we will proceed to do.

The fourth exception complains that the Circuit Judge erred in disposing of defendant's requests to charge, by saying to the jury : "That these requests are based upon the supposition on their part, that there was a trespass committed by the deceased, and that the object of the prisoner at the bar was to remove the trespasser, and these principles of law mostly apply only in case you find that Mr. Bodie was engaged in an effort to remove a trespasser from his land. They are all based upon that supposition, that his object was to remove a trespasser." The *gravamen* of the complaint, as we understand it, is that in using the language above quoted, the judge ignored the fact, that the prisoner might have gone to the scene of the rencounter, not for the purpose of removing a trespasser, but simply for the purpose of obtaining

evidence as to who was the person trespassing, and left the jury to infer that if the prisoner went there for the latter purpose, the principles announced in the requests to charge would not apply.

It must be remembered, however, that the remarks of the judge were made in reference to the requests as framed, and as they were not so framed as to cover a case where the prisoner went to the scene of action simply for the purpose of obtaining evidence as to who was the trespasser, and, on the contrary, were framed so as to present the law applicable to a case where the purpose was to remove a trespasser, it is very manifest that there was no objection to the remark of the judge which forms the basis of this exception.    But, more than this, it seems to us that the judge, in his general charge, had sufficiently stated the law as to the doctrine of self-defence, when one is upon his own premises for any lawful purpose, and it was not necessary to repeat this when dealing with special requests applicable to a particular state of circumstances.

The fifth and sixth exceptions may be considered together. They read as follows:  V.  "Because the Circuit Judge charged that 'in all questions of this kind, where self-defence is interposed as a plea, the defendant must satisfy you, not beyond a reasonable doubt, but by the preponderance of testimony, that he is entitled to the protection of that defence.  *  *  *  The State is bound to prove all beyond a reasonable doubt.  The State is bound to prove every point against the defendant beyond a reasonable doubt, or else the State must fail to obtain a conviction ; but when the matter has been established beyond a reasonable doubt, or when the matter has been established, then the defendant must satisfy you by a preponderance of testimony, not beyond a reasonable doubt, but as matter of belief, that he was acting in self-defence.'    In this, it is submitted, that his honor erred, for such charge took from the defendant the benefit of the reasonable doubt, which, in all cases, is thrown around him as a shield.    VI.  Because his honor charged that 'the preponderance of testimony means simply this: that you weigh the testimony, and if it is inclined to the one side more than the other, then that side has the preponderance.    It is like weighing a thing in a balance: where the weightiest testimony lies, there is the pre-

ponderance, and there must be a preponderance of testimony in favor of the defendant to establish his plea of self-defence, or else he fails.' In this, it is submitted, that his honor erred, for it takes away from the defendant the benefit of the reasonable doubt (as) to whether or not the preponderance of this testimony was in his favor, and if the jury had a reasonable doubt upon such question, it was their duty to give it to the defendant.''

The point of these two exceptions, as gathered from their terms and illustrated by the argument here, is, not that there was any error in saying to the jury that a defendant who sets up any special defence, such as an *alibi*, insanity, or self-defence, is bound to establish it by a mere preponderance of testimony, and need not establish it beyond a reasonable doubt, nor in defining what is meant by a preponderance of evidence—but the complaint seems to be that the error consisted in not instructing the jury further, that if they had a reasonable doubt as to which way the preponderance of the evidence was, they must give the defendant the benefit of such reasonable doubt. A sufficient answer to this would be, that we are unable to discover that the Circuit Judge was requested to give such further instruction to the jury. But as we do not wish to rest our conclusion in a case like this upon what might be regarded as a technicality, we will not decline to consider the question.

Inasmuch as it is quite clear that if the jury entertained a reasonable doubt whether the preponderance of evidence was in favor of the plea of self-defence, and inasmuch as the jury had been explicitly instructed that ''the State is bound to prove *every* point against the defendant beyond a reasonable doubt,'' and in another portion of the charge had been expressly told that if they ''had a reasonable doubt upon any question of guilt arising in the case, you will give the benefit of that doubt to the defendant,'' they could not fail to understand that if there was a reasonable doubt as to which way the preponderance of the evidence as to the plea of self defence lay, there would be such a reasonable doubt as to one of the material points in the case as would require an acquittal. The rule, as we understand it, is, that while the State, in a criminal case, is bound to prove every essential element of the charge made beyond a reasonable doubt, the

same strictness of proof is not required of a defendant who sets up a special defence, for he is only required to prove such defence by a preponderance of evidence; but this, of course, is subject to the general rule that if, upon the whole testimony, both on the part of the State and the defendant, the jury entertain a reasonable doubt as to any material point in the case, the defendant is entitled to the benefit of such doubt. See *State* v. *Paulk,* 18 S. C., 514; *State* v. *Bundy,* 24 *Id.,* 439; *State* v. *Welsh,* 29 *Id.,* 4.

The seventh exception is in these words: "Because his honor charged the jury: 'and if you find that the deceased did present his gun to the prisoner before he shot him, and it is not self-defence, why, then, it would be sufficient to reduce it to manslaughter, if he is not justified under the plea of self-defence.' In this, it is submitted, his honor erred, for such instruction was calculated to, and did, confuse the jury; for if the deceased did present his gun to the prisoner before he shot him, then the jury should have been instructed that, under such circumstances, the defendant would have been justified in self-defence in killing the deceased; and it was error in this connection to instruct the jury that such killing might be manslaughter." It is very manifest that this exception cannot be sustained, as it is based upon the untenable assumption that the mere fact that deceased presented his gun at the prisoner before he shot, would warrant the prisoner in taking the life of the deceased; for such assumption would have ignored the other elements necessary to make a case of self-defence, as, for example, as to who was in fault in bringing on the difficulty, and other points which had been fully and clearly explained to the jury in the general charge.

The eighth and ninth exceptions not having been taken in the manner prescribed by rule V. of this court might be disregarded, but for the reason indicated above, we will not decline to consider them in this case. The eighth exception complains of error in refusing to charge defendant's sixth request, which reads as follows: "If the jury believe that the defendant owned the land on which the homicide was committed, and that he had notified the deceased not to haul logs over or come upon the same, and that the deceased had not acquired a prescriptive right to the road leading

through said land, then the deceased had no right to enter upon said land, and if he did so, he became a trespasser, and the defendant had in law the right to request him to leave, and if he refused to go, the defendant had the right to put him off said premises, and in so doing to use such force as was necessary to accomplish that purpose; and if, while the defendant was so engaged in endeavoring to make the deceased leave said premises, the deceased assaulted the defendant in such a manner as to cause a man of ordinary firmness to apprehend death or great bodily injury, then the defendant was justified in resisting such assault, even to the taking of the life of the deceased."

The Circuit Judge did not refuse to charge the principles presented by this request, but used this language: "I decline to charge the sixth request in the language in which it is couched." So that it is manifest that the judge, while approving the general principles announced therein, objected only to the terms in which they were expressed; and in this he was not in error, for the language used in the request ignored the distinction between a trespass on land in possession of another and a trespass upon land owned by another. The law permits much more to be done in defence of possession than of mere ownership or legal title unaccompanied by possession. The language in which the request was couched also ignored the effect of a license to enter. But, in addition to this, the Circuit Judge had already fully and explicitly instructed the jury as to the law applicable to the right of a person to remove a trespasser who had intruded upon his possession, and it certainly was no error to decline to repeat such instructions in the language selected by counsel, especially when such language was not precisely accurate.

The ninth exception, which imputes error to the Circuit Judge in declining the eleventh request, which relates to reasonable doubts, and the tenth exception, which alleges error in the definition or description of reasonable doubt, may be considered together.[1] The eleventh request was not, in fact, refused, but

---

[1] The ninth and tenth exceptions were as follows:

IX. "Because his honor erred in refusing to charge the defendant's eleventh request, to wit: 'That if, from the evidence, the jury entertain a reasonable doubt as to the guilt of the defendant, or whether at the time of

its phraseology was changed so as to express the idea, really more favorably to the prisoner than it was expressed in the request, viz , that if there was a reasonable doubt as to any point in the case, the jury should give the benefit of such doubt to the prisoner. And as to the tenth exception, the definition or description of a reasonable doubt, it is sufficient to say that it was couched in very much the same language as that which was approved by this court in the recent case of the *State* v. *Senn, supra.* The objection seems to be to the use of the word "strong," but when it is considered that it has been frequently said that a reasonable doubt, which would avail the accused, must not be a mere fanciful doubt, but that it must be a serious, well-founded doubt, growing out of the evidence, there can be no reason to suppose that a jury would be misled by the substitution of the word "strong" for the words "serious" or "substantial" or "well-founded." All of these words are used, not in the sense of powerful, or overwhelming, but simply in contradiction to the words "flimsy," "fanciful," or "slight," and we cannot suppose that a jury would ever understand them in any other way. The law does not require that a criminal charge shall be proved beyond the slightest doubt, and it is only where the evidence leaves upon the minds of the jury—not a weak or slight doubt—but a serious or strong and well founded doubt as to the truth of the charge, that the law, in its mercy, declares that the accused shall have the benefit of the doubt.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.

---

the killing the defendant acted under circumstances calculated to excite the fears of a man of ordinary firmness and reason, or if, whether at the time of the killing, he had reasonable cause to believe from the circumstances it was necessary to kill the deceased to save his own life or his person from serious bodily harm, and such circumstances were not brought about by the fault of the defendant, then it is the duty of the jury to give the defendant the benefit of such reasonable doubt, and to acquit him.'

X. "Because the definition of the reasonable doubt as explained by his honor, the Circuit Judge, was too strong against the defendant. A reasonable doubt is such a doubt growing out of the testimony for which the juror, in his own mind, can give a reason. It need not be strong—it need only be reasonable."