8365

STATE v. ANGEL.

1. CONTRADICTION—WITNESS.—It is unnecessary to permit a party on
   cross-examination to bring out irrelevant matters for the purpose of
   contradiction, where the witness to be contradicted states that some
   statements made by him before were false and some partly true.
2. EVIDENCE—ADMISSIONS.—One defendant cannot complain of the
   admissions of his codefendant as to his own guilt.
3. IBID.—THREAT—CONFESSION.—Solicitation to a defendant to make a
   statement of the truth, *held* not to be a threat or an inducement to
   make a confession.
4. CHARGE.—Statements of the trial Judge in ruling on relevancy of
   evidence is not a charge on the facts.
5. JURORS.—To send a sick juror out with a doctor, who is a State's
   witness, for treatment, with the statement, in response to a sug-
   gestion as to caution, "I don't think a reputable doctor needs any

caution in Court," is an emphatic caution to the doctor as to his conduct toward the juror.

6. EVIDENCE—OPINION.—To permit a witness to say he did not know if his wife agreed with him as to the time the deceased came to his house on a certain night, when he had been asleep, is not error.

7. CHARGE.—A statement of the trial Judge on the offer in evidence of a reward for the apprehension of the murderer of deceased, "I think that is a very proper resolution," is not error.

8. EVIDENCE—REPLY.—A town ordinance prohibiting the manufacture, sale, etc., of liquor, offered in reply to evidence that the defendant had arrested and handcuffed deceased after a fight for violating this ordinance, while it might have been relevant, was not material since the statute imposed the duty to arrest.

9. CHARGE—CONTRADICTION—WITNESS.—The remarks here complained of as making the Judge a participant in the decision of the case, *held* to mean that the testimony offered in contradiction was inadmissible as such as the witness testified to the same things she is alleged to have said out of Court.

10. CONSTITUTIONAL LAW—EVIDENCE.—Witness is not protected from answering that she had been in jail by the constitutional guaranty, but here its exclusion was of no consequence as her refusal to answer had the same effect as if she had admitted it.

11. EVIDENCE—REASONABLE DOUBT.—The portion of the charge here complained of held to mean that the word "impression," construed with its connections, was used in the sense of profound effect on the intellect and not in the sense of an indefinite or indistinct notion, belief or opinion, nor is it susceptible of the contention that the jury should be controlled by the preponderance of the evidence.

Before ERNEST GARY, J., Oconee, November term, 1910. Affirmed.

Indictment against Charles L. Angel, Charles M. Gaines and Lewis Cantrell. Defendant, Cantrell, appeals.

*Messrs. Wm. J. Stribling* and *E. L. Herndon,* for appellant.

*Solicitor P. A. Bonham,* contra.

November 6, 1912.    The first opinion was delivered by

MR. JUSTICE FRASER.    This is a case in which Charles L. Angel, Charles M. Gaines and Lewis Cantrell were indicted for the murder of one Robert Emerson.    The defendants were convicted of murder with recommendation to mercy; from this conviction and sentence of life imprisonment, the defendants appealed.

The appellants, Angel and Gaines, withdrew their appeals and it is continued only as to the appellant, Cantrell.

I. The first and second exceptions complain of error in not allowing defendant's counsel to further test the credibility of one of the State's witnesses.

Much latitude is allowed in the cross-examination of witnesses and much latitude was allowed in this case.    The limit is relevancy.    It is true that a question otherwise irrelevant may become relevant to test the accuracy and truthfulness of a witness.    This witness admitted repeatedly that he had made statements that were only partially true and others that were wholly false, it was therefore unnecessary to allow the defendant to prove irrelevant matter simply to show what the witness himself admitted and these exceptions are overruled.

II. The third exception complains of error in allowing the statements of the defendant, Angel, after threats and inducements had been held out to him by those engaged in the prosecution.    Angel was a defendant and the Judge cautioned the jury that the statements of one defendant only bound the one making the statement, and therefore the defendant, Cantrell, cannot complain. Even if this were the exception of Angel it could not be sustained because neither from the statement of Todd nor from the letter of Long was a confession of guilt sought or expected.    They did not urge a confession of guilt, but a simple statement of the truth.    The reason for guarding confessions so jealously is, that those under sus-

picion of crime will, for some temporary supposed advantage, confess the commission of crimes that they did not commit.   Here Angel was urged to tell the truth because the truth would probably set him free.   Angel did not confess.

Authorities in other States are conflicting.   In *The State* v. *Gosset,* 9 Rich. Law 428, a statement of the prisoner was allowed after he had been told it would be better for him to tell the truth, but the question was not expressly decided. This exception is overruled.

III. The fourth exception complains of error in allowing the statement of the defendant, Gaines.   Gaines was a defendant and of course his statement was competent as to him.

IV. The fifth exception complains of another statement of Angel.   This exception is overruled for the reasons above stated.

V. The sixth exception complains of error in the comment of the trial Judge as to the relevancy of certain evidence.

This statement did not occur in the charge, but in ruling on evidence.   When the trial Judge rules on the admissibility of evidence, he must say whether it is relevant or no.   There was no error here and this exception is overruled.

VI. The seventh exception complains that a juror who was sick was allowed to retire from the courtroom with a physician—a State's witness—without caution not to discuss the case.

The record does not bear out this exception.   It shows: "Court: Let him go on, I don't think a reputable doctor needs any caution in Court.   Mr. Brown retires accompanied by Doctor Thode and the sheriff."   The statement contained as emphatic a caution as he could have given. Both seem to have been in charge of the sheriff.   Exception overruled.

VII. The eighth exception complains of error in the comment of the trial Judge on the evidence. What has been said under the sixth exception applies here, and this exception is overruled.

VIII. The ninth exception complains of error in allowing the solicitor to ask the witness, Hamp Price, if his wife did not disagree with him as to the time Emmerson came to his house on the night of his death.

This exception is overruled for the reason that the witness did not profess to know exactly at what time he went to sleep and could not have known how long he slept. His estimate as to the time, therefore, was a pure guess. Besides the witness answered that he did not know what his wife· thought about it.

IX. The tenth and eleventh exceptions complain of error in that the Court allowed the witness, Alto Russell, to express an opinion as to what Mrs. Johnson should have said as to whether she knew anything about the case or not, under the statement made by the solicitor and excluding his opinion on a statement made by defendant's counsel.

The record does not show that the Court ruled on either question. If he did rule, the witness was defendant's witness, both questions were leading, the State had a right to lead and the defense did not. All the facts being before the jury it was not error to allow an opinion.

X. The twelfth exception alleges error in that when defendant's counsel introduced a proclamation offering a reward for the apprehension and conviction of the murderer of the deceased, the presiding Judge said, "I think that is a very proper resolution."

The offer of a reward for the apprehension and conviction of suspected criminals is allowed by law and the Judge cannot be held to have erred when he simply approves that which the law allows. This exception is overruled.

XI. The thirteenth exception complains of error in excluding a town ordinance under which the defendant, Cantrell, claims to have arrested the deceased for transporting liquor.

This was error. The State had introduced evidence of the arrest and the defendant had the right to justify the arrest and make his right as clear as the circumstances allowed.

XII. The fourteenth exception complains of error in that the Court asked a witness this question: "Does she (Mrs. Johnson) claim to know anything about it now?" The error alleged being that the answer would be an opinion and second, that it was a charge on the facts.

This question did not call for an opinion. It was rather theoretical in its nature and the answer suggested was, no. If the State's witness did not claim at any time to know anything about the case, she had not sworn falsely. The jury might well have considered the question as an expression of the opinion of the Court. This exception is sustained.

After what has been said as to the fourteenth exception, the fifteenth need not be considered.

XIII. The sixteenth exception complains of error in the trial Judge in not allowing the witness, Addis, to testify as to the peculiar disposition of the deceased when drinking, as to the effect on his power of locomotion and on his mind. The record does not bear out this exception as the witness seems to have testified at length and that based on one occasion.

This exception is overruled.

XIV. The seventeenth exception is sustained for the same reason as the thirteenth. The seventeenth exception refers to the instructions under which this defendant made the arrest of the deceased.

XV. The 18th, 19th, 20th and 21st exceptions refer to statements made by the defendant, Gaines. These state-

ments were only evidence against the defendant who made them under the ruling of the Court and this defendant cannot complain.

XVI. The twenty-second exception complains of error in that, when the defendant's counsel asked a State's witness if she had been in jail, the Court said, "You need not answer that unless you wish."

The Constitution says, "Nor shall he be compelled in any criminal case, to be a witness against himself." The Constitution does not restrict the privilege to the defendant, and this Court has no power to amend the Constitution. This exception is overruled.

XVII. Appellant in the 23d exception complains of error in the following charge: "So it is not what you know about it, but what you believe about it. In other words, what impression has the evidence that you have heard detailed here and the arguments on that evidence— what impression has that made on your mind." And in the 24th exception he complains of the following: "But the law says this, that before you find a verdict of guilty, that where the facts necessary to make out the material allegations of the indictment are so equally balanced that you cannot come to a satisfactory conclusion of what the fact is—the law says under these circumstances it is better to give the benefit of that doubt to the defendants, so the defendant in all criminal cases is entitled to the benefit of any reasonable doubt you may have on any fact necessary to make out the case for the State. That is the defendant's privilege. If your mind is in that state and you can't form any conclusion as to that doubt, the law says if your mind is in that state, give the benefit of that doubt to the defendant and if the facts are that evenly balanced, give the benefit to the defendant."

These exceptions must be sustained. It is not what the jury may think or what may be their impression, unless they are convinced, satisfied beyond a reasonable doubt of the

defendant's guilt, they cannot convict. The charge as to evenly balanced testimony is the rule as to the preponderance of the evidence.

*State* v. *Bodie,* 33 S. C., pp. 132-133, 11 S. E. 624, says: "The rule, as we understand it, is, that while the State, in a criminal case, is bound to prove every essential element of the charge made, beyond a reasonable doubt, the same strictness of proof is not required of a defendant who sets up a special defense, for he is only required to prove such defense by a preponderance of evidence; but this, of course, is subject to the general rule that if, upon the whole testimony, both on the part of the State and the defendant, the jury entertain a reasonable doubt as to any material point in the case, the defendant is entitled to the benefit of such doubt."

It is not necessary to multiply authorities.

Inasmuch as the defendants, Angel and Gaines, have withdrawn their appeals, it is not necessary to consider the last two exceptions.

I think the judgment should be reversed.

MR. JUSTICE WATTS *concurs.*

MR. JUSTICE WOODS.  The body of Robert Emerson with his skull fractured was found on 6 December, 1909, on the railroad trestle leading into the town of Walhalla. The July following the defendants were indicted for Emerson's murder and at the next term of Court were convicted with recommendation to mercy. They were then sentenced to life imprisonment in the penitentiary at hard labor. The defendant, Cantrell, appeals from the judgment and sentence.

Examination of the record seems to me convincing that the defendant has had a fair trial and that none of the exceptions are well founded. I am unable, therefore, to concur in the opinion of Mr. Justice Fraser that exceptions 13, 14, 17, 23 and 24 should be sustained.

By exceptions 13 and 17 error is assigned in the exclusion of an ordinance of the town of Walhalla prohibiting the manufacture, sale, barter, exchange, receipt, acceptance, delivery, storing, or keeping in possession intoxicating liquors within the town, and the exclusion of evidence that the defendant, Cantrell, as policeman had instructions to arrest any person transporting liquors in the town. The State had introduced testimony that sometime before the death of Emerson, he had fought with Cantrell in resisting an arrest, and that he had been overcome and handcuffed. The contention of appellant's counsel is that the town ordinance offered, and the instructions to Cantrell, would have tended to show that this arrest on the charge of transporting liquors was made in discharge of official duty and not from malice against Emerson. The testimony as to the arrest was introduced to show that the ill feeling of Cantrell originated with this fight, or that the arrest was made on account of personal ill feeling when Emerson had no liquor in his possession except one bottle for his own use. There was not and could not have been any issue as to the duty of Cantrell as a policeman to arrest a person illegally transporting intoxicating liquors. The statute law of the State, of which all must take notice and which required no proof, imposed that duty upon him. Crim. Code, 1912, sec. 824 and sec. 834. This being so, the town ordinance and the instructions to the policeman might have been admitted as relevant. But they were not material since the statute imposed the duty to arrest if Emerson was violating the law, and there was no issue on that point.

Exception 14 charges that the Circuit Judge so expressed his opinion as to the effect of the testimony of Ida Johnson in the remarks made in the course of the examination of the witness, J. W. Davis, as to make him a participant in the decision of the case. Ida Johnson had testified that on the night of the death of Emerson, three men whom she thought to be the men accused came to

her house drunk, with their clothes very muddy, and that one of them said, "How do you think Bob Emerson feels walking the ties tonight?" In the effort to contradict her the following questions were asked and answers adduced in the cross-examination: "Chief Davis and another man did come to your house in Walhalla? They came to Fannie's house. I was there at Fannie's. Didn't they say to you on that occasion, asked you if you knew anything about the Emerson case? They asked me if I seen Mr. Emerson the day before or the night before, or two or three days before, and I told them no, I didn't. They asked you if you knew anything about the case at all, and didn't you say no, that if you did you would be glad to tell it? I don't remember them asking me that. Do you say that you didn't say it? I don't remember them asking me that question." The remarks of the Judge appear in the following extract from the record covering the testimony of Davis: "Have you seen the woman, Ida Johnson? Yes, sir. I wish you would please state if on a night when one of the inquests was being held here on the body of Robert Emerson if you and Otto Russell went to a house here in Walhalla where she was and if you asked her if she knew anything at all about the Emerson matter, and that she said nothing, and if she said that, if she knew anything about it she would be glad to tell it? That's about the words she said. Court: Does she claim to know anything about it now? I don't know, sir." Cross-examination, by Mr. Bonham: "At that time you were with Mr. Russell—and you, like Mr. Russell, would have been unable to say whether or not these three men coming to that house would have had anything to do with it? Objected to by Mr. Herndon. Irrelevant. Court: As I understand the witness' testimony she doesn't claim to know anything about the killing." Considering the context, the remarks of the Judge meant no more than this, that the testimony was not admissible as a contradiction because Ida Johnson had not said in her testimony that she knew anything about Emerson

or the Emerson killing. Examination of her testimony and the whole record shows that the Judge was right, for Ida Johnson only testified to the defendant having been at her house that night and having spoken of Emerson, but not in such a way as to give her any information as to his death. If casual remarks like this in the course of the testimony were allowed to annul verdicts, it would be very hard for a Circuit Judge to get safely through a trial.

The exceptions to the charge seem to me to depend on most unsubstantial verbal refinement. The following is one of the instructions alleged to be erroneous: "Now, you have heard the testimony, and the question is, not what you know about it, but what you believe about it; because if you knew anything about it, it would not be proper for you to be on that jury. You see, if a man knows about it, if he has seen or heard and knows anything about it, he proves that in the witness chair. So it is not what you know about it, but what you believe about it. In other words, what impression has the evidence that you heard detailed here and the arguments on that evidence; what impression has that made on your mind? And whatever that is, that is your verdict. But the law says this: That before you find a verdict of guilty, that where the facts necessary to make out the material allegations of the indictment are so equally balanced that you cannot come to a satisfactory conclusion of what the fact is, the law says under those circumstances, it is better to give the benefit of that doubt to the defendants. So the defendant in all criminal cases is entitled to the benefit of any reasonable doubt you might have on any fact necessary to make out the case for the State. That is the defendant's privilege. If your mind is in that state and you can't form any conclusion as to that doubt, the law says if your mind is in that state, give the benefit of that doubt to the defendant, and if the facts are that evenly balanced, give the benefit to the defendant." It is perfectly manifest that in saying that the jury were to be guided by "the

impression" made on their minds from the evidence, the Judge meant the conclusion or conviction produced by the evidence. The context shows that the word "impression" was used in the strong sense of a profound effect on the intellect, and not in the weak sense of an indefinite or indistinct notion, belief, or opinion. There is no foundation, even in verbal criticism, for the contention that the instruction meant that the jury should be controlled by the preponderance of the evidence. The language, as it seems to me, was plain and simple, admitting of no other meaning than that the verdict must be for the defendants if the evidence was so equally balanced that the jury could not say beyond reasonable doubt that the defendants were guilty. The instruction was not given that it devolved on the defendant even to make out the defense of *alibi* by the preponderance of the evidence.

As to the 22d exception, I think the witness, Bessie Brown, was not protected from answering the question whether she had been in jail in Georgia by the constitutional guaranty that no person shall be compelled to be a witness against himself (*State* v. *Williams,* 65 S. C. 24) ; but the error of excluding it was of no consequence, for, as a practical matter, it cannot be doubted that the refusal of the witness to answer had the same effect on the mind of the jury as if she had admitted that she had been in jail.

As to the other exceptions I concur in the opinion of Mr. Justice Fraser.

All the exceptions are overruled and the judgment affirmed.

MESSRS. CHIEF JUSTICE GARY *and* JUSTICE HYDRICK *concur.*