6755

## STATE v. BROOKS.

HOMICIDE.—EVIDENCE of previous quarrels, ill feeling or hostile acts between parties is admissible to show the animus probably existing between them at the time of a homicide.

2. IBID.—SELF-DEFENSE—DWELLING.—Under the evidence in this case it was error not to instruct the jury that one in his dwelling-house yard has a right to defend himself against a violent assault by a trespasser without retreating.

Is one within the curtilage of his dwelling in fact and in law within his dwelling?

Before GAGE, J., Marlboro, Spring term, 1906. Reversed.

Indictment against Oscar Brooks for murder, of Harrison Alford. From sentence on verdict of "Guilty, with recommendation to mercy," defendant appeals.

*Messrs. Townsend & Hamer,* for appellant, cite: *Charge should be clear:* 65 S. C., 213. *Evidence as to threats should not have been admitted:* 36 S. E. R., 714, 911. *Rights of defendant on his own premises:* 71 S. C., 136; 72 S. C., 203; 11 S. E. R., 627; 32 S. E. R., 854. *Manslaughter:* 24 S. E. R., 1029; 31 S. E. R., 62. *Self-defense:* 68 S. C., 134; 7 S. E. R., 314.

*Solicitor J. Monroe Spears,* contra, cites: *Self-defense:* 68 S. C., 133; 73 S. C., 282. *No error to refuse request containing faulty proposition:* 52 S. C., 224; 43 S. C., 133;

46 S. C., 203. *Request not applicable to some view of the evidence should be refused:* 66 S. C., 449. *Refusal of new trial not considered, if there be any evidence to support the verdict:* 68 S. C., 53; 73 S. C., 60; 66 S. C., 303; 73 S. C., 102. *Whole charge must be considered:* 43 S. C., 133; 39 S. C., 97. *Judge should state general principles of law applicable to the case:* 56 S. C., 213; 26 S. C., 599. *Evidence of previous trouble is admissible:* Elliott on Ev., 3029; 66 S. C., 419.

February 21, 1908. The opinion of the Court was delivered by

MR. JUSTICE JONES. The defendant, Oscar Brooks, charged with the murder of Harrison Alford, in Marlboro County, March 4, 1906, was found guilty, with recommendation to mercy, and received sentence of life imprisonment.

The difficulty had its origin in a controversy as to the custody of Etta Brooks. This girl, who was about nine years old, was the daughter of the defendant by his first wife, Molly Alford. Defendant moved to Georgia and his wife died there. About two years later, when Etta was about three years old, she was taken charge of by Helen Alford, her grandmother, and reared as one of her family. The deceased was a son of Helen Alford and lived with her. In January, 1904, defendant returned to Marlboro County and later married a daughter of Helen Alford, a half-sister of his first wife, and for some time lived in her home. While living at this place, defendant expressed an intention to take Etta with him when he moved, and testimony was admitted, over objection by defendant's counsel, to show that there was an altercation between defendant and Helen Alford about it, during which defendant struck Helen Alford, and that some days later the subject came up again and defendant cursed the oldest daughter of Helen Alford, whereupon the deceased, who was present, jerked defendant down and got on top of him and was pulled off by some member of the family. The defendant then threatened to kill Harrison.

10—79

Exception eight assigns error in the admission of this testimony as to difficulties occurring eight months before the homicide and in thus impeaching the character of the defendant by showing specific acts of violence when his character was not put in issue. The evidence was properly admitted under the well-settled rules admitting evidence of previous quarrels, ill-feeling or hostile acts between the parties, to show the animus probably existing between them at the time of the homicide. *State v. Adams,* 68 S. C., 425, 47 S. E., 676; *State* v. *Emerson,* 78 S. C., 90.

One Sunday evening, March, 1906, Etta was accompanying the defendant to his home, at the command of defendant, according to Etta's statement, but at her own request according to the defendant's version, and they stopped at the home of Willie Johnson, about two hundred yards from the house of defendant, to which he had moved after leaving Helen Alford's. The deceased and two others, after calling at the house of defendant and not finding him there, went to Johnson's house. Harrison standing with knife in hand, addressed defendant, who was sitting down, asked why he had brought Etta off up there, to which defendant replied that he had not done so. The deceased declared that he had done so and that he would carry Etta back home that night. The defendant, fearing trouble and as a pretext for getting away, asked for a drink of water and stepped out of the door and ran to his home, leaving his wife and Etta at Johnson's. The defendant was soon heard to call for his wife and Etta to come home, and was heard cutting wood. Johnson testified that deceased declared: "I came after Etta." "I am going to carry her home tonight or Oscar Brooks will kill me or I will kill him." Defendant declared to Evander McClellan and Henry Sports before deceased (who was approaching) arrived, "I want you to bear witness that if Harrison Alford comes in my yard tonight there will be bloodshed, for I am going to forbid him coming in." When they reached the entrance to the yard of defendant's dwelling, defendant ordered deceased and his

two companions, Coot Turner and Henry McDowell, not to enter. Defendant was then standing at his woodpile, near his dwelling, with ax in hand, with which he had been cutting wood. Deceased's two companions stopped and advised him not to enter, but deceased went on in, declaring that he would go where he damned pleased, further saying, "I will go in you yet, old man." The deceased went around by the pump and after pumping once or twice he continued around towards the doorsteps, near which the defendant was then standing.

State witness, Evander McDowell, testified: "Harrison continued on around and got something near the doorstep and Mr. Brooks. * * * Harrison was venturing on toward Mr. Brooks and Mr. Brooks said, 'Stand off; if you do not I will hurt you.' " That the parties cursed each other and about that time Brooks struck Alford with the ax. Defendant testified that he was going towards his door intending to get in the house first, that deceased came on him cutting at him with a knife when he struck with the ax to save his own life. No other witness testified to seeing any knife in deceased's hand at the time of the fatal blow. There was testimony that deceased put his knife in his pocket before entering the yard and that his knife was found closed in his pocket after his death, about two days later. There was also testimony that Evander McDowell and Henry Sports, State witnesses, who testified that they saw no knife in deceased's hands, declared before the trial that deceased was cutting at defendant with a knife when defendant struck him with the ax. All the witnesses agree that the fatal blow was struck within the yard of defendant's dwelling and within a few feet of his doorsteps, at night, after warning not to enter the yard and not to come on defendant. The deceased was younger, heavier and stouter than defendant.

The defendant sought to excuse the homicide on the ground of self-defense and defense of his dwelling.

Judge Gage charged all the requests presented by defendant's counsel on the law of self-defense except the following

request, the refusal of which is the ground of appellant's main contention: "3. When a trespasser enters upon the premises or land of a party, it is his duty to gently lay his hands upon him and bid him leave, and if he refuses he is justified in using sufficient force to expel him. But the dwelling-house of a man, where he lives, is his home, or castle, and he may repel force by force in the defense of his person, habitation or property, against one who manifestly intends and endeavors by violence to commit a felony or either; and in such case he is not bound to retreat, but may pursue his adversary until he has secured himself from all danger, and, if he kills his adversary, it is excusable homicide."

In response to this request the Court said: "Now you have heard, in the argument of counsel and in the requests to charge, another defense, called the defense of the castle. That law is this: It is a law which requires a man to defend his own home—or, more accurately, his own dwelling-house. If a man is in his dwelling-house, and another man offers to break into it by force, the man in the house has the right to keep him out, even to the extent of killing him. But that belongs to the man's dwelling-house; it does not belong to his yard; and, under the testimony of the case here, that doctrine has no application. And even in a man's house, if a person enters, if he enters without violence, and is in, it was decided one hundred years ago, in this State, that the occupant of the house could use only such force as was necessary to put him out; and his unlawful presence without violence would not justify an occupant of the house in killing him to get him out. He can kill him to keep him from coming in there. If he is in peaceably, he can use only such force as is necessary to put him out. As I have told you, the doctrine of the castle has no application in this case because it is not claimed that the killing was done in the dwelling-house."

We think it was harmful error to refuse the instruction. The Court, neither in response to this request nor in any

other portion of his charge, instructed the jury as to the right of defendant to defend himself without retreating against a violent assault of a trespasser within his dwelling-house yard, but on the contrary the case was submitted to the jury under the rules ordinarily governing the law of self-defense, including the duty of defendant to retreat, if there be a probable means of escape.

For the purpose of this question, only, we must assume as a possible theory of the case that the deceased was struck while assaulting defendant with a knife, for such was the testimony of defendant.

In the case of *Beard* v. *United States,* 15 Sup. Ct. Rep., 962, after a review of numerous authorities, the Court held that a person on his premises outside his home, in his orchard lot fifty or sixty yards from his dwelling, if assaulted by another with a deadly weapon, is not bound to retreat but may stand his ground and meet such attack even to the killing of his assailant, if in other respects he brings himself within the ordinary rules of self-defense. The Court quotes, among other authorities, from East Pleas of the Crown, 271; Foster's Crown Cases, 273; 2 Wharton Cr. Law, par. 1019, language substantially the same as the second sentence of the request which was refused.

In *State* v. *Bodie,* 33 S .C., 124; 11 S. E., 624, the Court recognized as correct instructions to the jury substantially in accordance with appellant's request in this case.

The case of *State* v. *Rochester,* 72 S. C., 199, 51 S.E., 658, holds that one on his land, adjoining a public road, if assaulted by another who is on such road, is bound to retreat before taking the life of his adversary, if there is probability of his being able to escape without losing his life or suffering grievous bodily harm. The Court declares the reason of this distinction to be that, under the circumstances, he would not have the right to eject his adversary from the place where he had a right to be. In the case at bar the deceased was a trespasser and the defendant had a right to eject him.

If one on his own premises, not a part of his habitation precincts, is not bound to retreat before the violent assault of a trespasser, for a greater reason, one within the curtilage of his home is not bound to retreat.

There is much reason and authority for holding that one within the curtilage of his dwelling is in fact and law within his dwelling. *Lee v. State,* 92 Ala., 15; 25 Am. St. Rep., 19 *State* v. *Bartmess,* 33 Or., 110, note; 74 Am. St. Rep., 739; 25 Ency. Law, 278.

We do not regard it important to consider at length any of the remaining exceptions to the charge as to self-defense and manslaughter. Considering the charge as a whole, the law declared as to manslaughter and as to self-defense, except in the particular above discussed, was free from error.

For the error indicated, the judgment of the Circuit Court is reversed and the case remanded for a new trial.