## 11357.

### STATE v. BRADLEY

### (120 S. E., 248)

1. HOMICIDE—INSTRUCTION THAT DECEDENT ENTITLED TO KILL DE-
FENDANT TO GET HIM OFF PREMISES HELD REVERSIBLE ERROR.—An
instruction that if defendant refused to leave decedent's premises,
after being ordered off, decedent could use force enough to take
his life, if it was necessary to do that, to get him off the premises,
*held* reversible error.

2. HOMICIDE—OWNER MAY KILL IF NECESSARY TO EXPEL OR EXCLUDE
TRESPASSER FROM DWELLING.—A man who attempts to force himself
into another's dwelling or who, being in the dwelling by invitation,
refuses to leave when owner makes that demand, is a trespasser,
and owner may use as much force even to the taking of his life, as
may be reasonably necessary to prevent the obtrusion or to ac-
complish the expulsion.

3. HOMICIDE—ONE ATTACKED IN HIS HOME NOT REQUIRED TO RETREAT.
—If defendant or a member of his family is violently attacked in
his home, without retreating, defendant may not only instantly use
such force as may be necessary to protect himself or a member of
his family from serious bodily harm or the perpetration of a
felony, but he may in addition thereto combine such force as is
necessary to eject the assailant, even killing him if necessary.

4. HOMICIDE—DUTY OF RETREAT ORDINARILY APPLICABLE THOUGH AT-
TACK OCCURRED ON DEFENDANT'S PREMISES.—If one is violently at-
tacked at some place on his premises, other than a place where the
rights pertaining to habitation apply, the duty to retreat is ordi-
narily applicable.

5. HOMICIDE—ONE KILLING ANOTHER, PROTECTING HIS HABITATION,
NOT ENTITLED TO PLEAD SELF-DEFENCE.—Where one kills another
while the latter is in the exercise of his right to protect his habita-
tion, the slayer is not entitled to plead self-defense.

6. HOMICIDE—RIGHT TO KILL, IF NECESSARY TO EJECT TRESPASSER, NOT
APPLICABLE TO PREMISES AS A WHOLE.—The right of occupant to expel
a trespasser and to use such force as is necessary, even to killing
him, is limited to the place of his habitation or perhaps of his
curtilage, and does not apply to other parts of occupant's premises.

---

NOTE: On homicide or assault in defense of habitation or property,
see note in 25 A. L. R., 508.

On' duty to retreat when not on one's own premises, see note in
18 A. L. R., 1279.

7. CRIMINAL LAW—IN DETERMINING WHETHER ERROR PREJUDICIAL, EVIDENCE CONSIDERED MOST FAVORABLY TO APPELLANT.—In determining whether an erroneous instruction is prejudicial, the evidence will be considered most favorably to appellant.

8. TRESPASS—SIMPLE TRESPASS NOT INDICTABLE.—In the absence of willful, malicious injury or of an entry after notice, a simple trespass is not an indictable offense.

Before DEVORE, J., Sumter.    Reversed and remanded.

Edgar Bradley was convicted of manslaughter and he appeals.

The statement of facts set forth in the record was as follows:

The appellant was tried in October, 1921, for the killing of W. F. Outlaw, near the City of Sumter, on the 25th day of December, 1920. This trial resulted in a mistrial. He was again put on trial in October, 1922, which resulted in a verdict of manslaughter, and he was thereupon sentenced to a term of four years' imprisonment, from which judgment he now appeals to this Court.

The appellant, a young man about 21 years of age, had, according to his testimony, been paying marked attention to Miss Marie Outlaw, the 15 year old daughter of the deceased. The appellant visited her with full knowledge of her parents on Wednesday and Sunday nights, at least, in the week, and conducted a correspondence in which they both wrote often and which she did not in any way attempt to conceal. The appellant claimed that they were engaged to be married and that the relation was not unknown to her family.

On the evening of the killing, the appellant had accompanied this young lady to her home from the City of Sumter, where she had gone with her cousin to attend the picture show, but took a ride with the appellant instead of going to the show. Upon arrival at the young lady's home she invited the appellant in, and they both went to the room of her mother, with whom the appellant engaged in pleasant conversation. This attitude was usual, as the appellant had

always been entirely proper, respectful, and apparently agreeable toward the family of the young lady. While the appellant was talking to Mrs. Outlaw, the deceased came in the room, dressed, with his hat on, from his room where he had been lying across his bed, probably asleep. There is a sharp conflict in the testimony as to what occurred between the appellant and the deceased at this time, the state contending that the appellant was abusive in language and threatening in manner toward the deceased, and the appellant contending that without any provocation, and, probably, as the result of excessive drinking, he was assaulted by the deceased with fist and knife, from whom he escaped by running out of the house, his fiancee opening the door for him. At any rate, after words had passed between them, the appellant left the house, followed by the deceased a short time thereafter with his gun in hand. The appellant, who had been participating that day in a Christmas shooting match in which turkeys were offered as a prize for successful marksmanship, still had his gun in his automobile, which he left standing near the left front corner of the piazza of the house, at the time he and the young lady left the same to go into the house. As appellant left the house, he went by his automobile and hurriedly secured his gun, left the yard of the deceased, to which he did not return before the shooting, and proceeded down a road, which had long been in use and which led from the yard of the deceased to a public road leading by the place, some little distance therefrom, to the City of Sumter, which was about 2 miles away. After going about the distance of 150 feet from the front of the house, the appellant testified that he heard the deceased exclaim, "Stop, I am going to kill you." Upon hearing this exclamation, the appellant turned around, being at the time according to evidence adduced by the State about 20 feet from the deceased, and according to the evidence of an engineer, who made measurements at the scene based upon the information given him by the appellant, about 40 feet from the deceased, and fired two shots at the deceased, both of which were fatal and

from which he died almost instantly. At the time of the shooting the appellant was standing in or near the edge of the road referred to, and at the time the fatal shots were fired the contention and observation of the appellant was that the deceased had his gun raised and leveled on him and was in the act of shooting him.

At the trial the defendant interposed the plea of self-defense.

3. That the presiding Judge erred in charging the jury as follows: "I charge you in that connection that a person invited to another's house by any member of the family, or by somebody who has authority to invite him, that would not be a violation of the law for him to go there, but if, after he got there, he should become offensive to the parents, to the father or mother, or to the head of the family, or whether he should become offensive or not, if he was ordered off, it would be his business to go, and if he didn't go, the owners of the premises could use such force necessary to put him off, and he could use force enough to take his life if it was necessary to do that to get him off the premises"— it being respectfully submitted that no one under the law of this State has the right to "use force enough" to take the life of even a trespasser simply "to get him off the premises."

*Messrs. Tatum & Wood* and *Mendel L. Smith,* for appellant, cite: *Charge on manslaughter wrong:* 115 S. C., 214. *Provocation:* 104 S. C., 250. *No right to kill in defending property:* Bish. New Cr. L. (8th Ed.) Secs. 536, 857, 861, 875; Clark's Cr. L. (2nd Ed.), 172, 173, 174. *Right of defendant to defend himself in yard of his assailant:* Bish. New Cr. L. (8th Ed.) Sec. 858; Clark Cr. L. (2nd Ed.), 171; 25 S. C., 168; 33 S. C., 117; 40 S. C., 331; 43 S. C., 205; 79 S. C., 144; 85 S. C., 247; 95 S. C., 127; 113 S. C., 256; 120 S. C., 205; 115 S. E., 303. *Rights and duty of one in own dwelling to a guest:* Bish. New Cr. L. (8th Ed.), 858; 39 Ill., 408; 54 Conn., 307; 38 Mich., 270; 72 S. C., 199; 83 S. C., 401; 40 S. C., 361; 4 Mich., 67; 79

S. C., 144; 113 S. C., 256. *Testimony of self-defense need not preponderate other testimony:* 29 S. C., 4; 33 S. C., 117; 36 S. C., 497; 38 S. C., 333; 72 S. C., 223; 73 S. C., 257; 76 S. C., 91; 82 S. C., 3881; 90 S. C., 290; 121 S. C., 15.

*Messrs. F. A. McLeod, Solicitor,* and *McLeod & Dennis* for the State.

December 7, 1923.

The opinion of the Court was delivered by Mr. JUSTICE COTHRAN.

The circumstances attending the homicide in this case are fully narrated in the "Statement of Facts," set forth in the record for appeal, which will be reported. Let the third exception also appear in the report of the case.

The error in the charge of the presiding Judge, as disclosed by this exception, is so apparent that the Court does not deem it necessary to consider any other point in the appeal.

The peculiar circumstances of this homicide disclose the necessity of appropriately defining the respective legal rights of the parties at the time and place of the occurrence. The defendant claims that he shot the deceased in defense of his life, at a point away from the habitation and curtilage of the deceased, but upon his premises, near the road which led from the yard of the deceased to the public road leading to Sumter. If it be the law as the Circuit Judge charged the jury, "If he (the defendant) was ordered off, it would be his business to go, and if he didn't go, the owner of the premises could use such force (as was) necessary to put him off, and he could use force enough to take his life, if it was necessary to do that to get him off the premises," then it is clear that the defendant had no right to kill the deceased in order to prevent him from doing that which under the law he had a right to do. There is evidence tending to show that when the defendant shot, the deceased was in the act of doing what the Circuit Judge charged the jury he had

the legal right to do. The charge bore heavily upon the defendant's plea of self-defense, practically annihilated it, for it is conceded on all sides that the defendant had been ordered off the place and at the time of the killing was on the premises of the deceased.

There are essentially different situations which call for the application of the law of habitation, curtilage, and premises; they should not be confounded, as the law differs in the application to the several situations.

1. *When the occupant is the slayer and stands upon the right to protect his habitation, apart from the plea of self-defense.*

A man who attempts to force himself into another's dwelling, or who, being in the dwelling by invitation or license refuses to leave when the owner makes that demand, is a trespasser, and the law permits the owner to use as much force, even to the taking of his life, as may be reasonably necessary to prevent the obtrusion or to accomplish the expulsion.

As the learned counsel for the appellant suggests, in ancient days habitations were necessarily converted into strongholds of defense, and the dwelling became a castle. The law crystallized the familiar principles: "While the man keeps the door of his house closed, no other may (unlawfully) break and enter it"; "The persons within the house may exercise all needed force to keep aggressors out, even to the extent of taking life." Bishop, New Cr. L. (8th Ed.) § 858. The dwelling house of a man is his castle, and he may not only defend the same, if necessary or apparently so, against one who manifestly endeavors to enter the same in a wanton, riotous, or violent manner, or with intent to commit a felony on him or some inmate of his household or guest, or the habitation itself, but also against one who is only attempting to commit the misdemeanor of a forcible entry, even to the extent of killing the assailant, if such degree of force be reasonably necessary to accomplish the purpose of preventing a forcible entry against

his will.    *Brown v. People,* 39 Ill., 408.    *State v. Scheele,*
57 Conn., 307; 18 Atl., 256; 14 Am. St. Rep., 106.    *People
v. Lilly,* 38 Mich., 207.    *State v. Brooks,* 79 S. C., 144; 60
S. E., 518; 17 L. R. A. (N. S.), 483; 128 Am. St. Rep.,
836; 15 Ann. Cas., 49.    *State v. Gibbs,* 113 S. C., 256;
102 S. E., 333; Clark, Cr. Law (2d Ed.), 170, 171; Hughes.
Cr. Pro. § 3541.

"The occupant may, however, waive the protection of the
castle and allow one to enter therein by express or implied
license or invitation.    Such a person cannot lawfully be
ejected by the use of violence until he has been requested to
depart, and if he refuse to heed the request the hands must
be laid on gently and thereafter only so much force be used
as is necessary to accomplish the ejectment."

"But no man has the right, as the Court well says in the
case of *State v. McIntosh,* 40 S. C., 361, 363; 18 S. E.,
1033, to kill an invited guest without any notice to leave
and one so killing does not occupy the position of one who
slays in defense of the castle, and for similar reasons exces-
sive force, or a needless battery, resulting in the death of
one, employed in the ejectment of such person from the
dwelling house cannot be excused.    (Bish. New Cr. Law,
8th Ed., 895.)

"Even though one should enter the habitation of another
without his consent or permission, or against his positive
objection, and thereby assume the status of an intruder or
trespasser, yet, if he came peaceably and is not misbehaving,
he should be first ordered away, and thereafter there is no
practical distinction between the rights of the occupant in
effecting his ejectment and the case of a licensee.    It has
been held that where one, although forbidden to enter, went
in peaceably, the occupant had no right to kill him upon a
failure to instantly obey an order to leave, and that such
act was murder.    *People v. Horton,* 4 Mich., 67.

"Of course, if the entry itself is made in a reckless,
riotous or violent manner, or is effected by overcoming the

physical or verbal opposition of the occupant, or is made under such circumstances as manifestly evidence a purpose to endanger the life or limb of any inmate, or to commit a felony on them, the habitation or property therein, in other words, is not quiet and peaceable, no request to depart, or the laying on of hands, need precede, as a legal requirement, the act of ejectment by such force as is necessary, even to the killing of the assailant, for the very obvious reason, as is well said in one of the cases, 'since the trespasser knows as well without express words as with, that his absence is desired.' "

The foregoing principles apply to the rights of the occupant in the protection of his habitation, apart from the right of self-defense, which obviously may also under such circumstances be asserted. They manifestly do not apply except in relation to the habitation. "In such a case the occupant is not required to retreat, but may press forward availing himself, in addition to every legal right of self-defense which one would have on other parts of the premises, of the right also to put the objectionable one out of the house, and to use as much force as is necessary for the purpose even to the extent of taking his life."

2. *When the occupant is also the slayer and stands upon his right of self-defense, claiming, not the right to protect his habitation, but immunity from the law of retreat, which ordinarily is an essential element of the plea.*

"If one is violently attacked in his home, or any member of his family, without retreating, he may not only instantly use such force as may be necessary to protect himself, or family, from the loss of life or serious bodily injury, or against the perpetration of a felony, but he may in addition thereto combine such force as is necessary to eject the assailant, whom he may kill if this extreme measure appear unavoidable." Bishop's New Cr. Law (8th Ed.) § 859, subd. 3.

35—S. C.—126.

If one is violently attacked at some other place on his
to an attack made anywhere upon the defendant's premises.
4     premises, where the rights pertaining to the habita-
tion do not enter into consideration, he, of course,
has no such rights; but he has the right, in establishing his
plea of self-defense, to claim immunity from the law of
retreat, which ordinarily is an essential element of that de-
fense.

In *State v. Gibbs,* 113 S. C., 256.; 102 S. E., 333, it was
held that the following charge should have been given:

"A person on his own premises and outside of his dwell·
ing, but within the curtilage, if assaulted by a deadly weapon,
is not bound to retreat, but may stand on his own ground
and meet such attacks even to killing his assailant."

The words "within the curtilage," in this quotation, were
not as a limitation upon the rule that the immunity extended
intended to apply to the particular facts of that case, and

In *State v. Brooks,* 79 S. C., 144; 60 S. E., 518; 17 L.
R. A. (N. S.), 483; 128 Am. St. Rep., 836; 15 Ann. Cas.,
49, it is held that a person on his premises, outside his home,
if assaulted by another with a deadly weapon is not bound
to retreat, but may stand his ground, and meet such attack
even to the killing of his assailant, if in other respects he
brings himself within the ordinary rules of self-defense,
citing *Beard v. U. S.,* 158 U. S., 550; 15 Sup. Ct., 962; 39
L. Ed., 1086, where it is held:

"The defendant was where he had the right to be, when
the deceased advanced upon him in a threatening manner,
and with a deadly weapon; and if the accused did not pro-
voke the assault and had at the time reasonable grounds to
believe and in good faith believed, that the deceased intended
to take his life or do him great bodily harm, he was not
obliged to retreat, nor to consider whether he could safely
retreat, but was entitled to stand his ground and meet any
attack made upon him with a deadly weapon, in such way
and with such force as, under all the circumstances, he, at
the moment, honestly believed, and had reasonable grounds

to believe, was necessary to save his own life or to protect himself from great bodily injury."

See, also, note 5 Ann. Cas., 1000.

3. *When the occupant is the slain and the homicide occurred while he was in the exercise of his right to protect his habitation.*

In such a case, it is manifest that the slayer having committed an act calculated to provoke a difficulty and which in fact did provoke it, would be barred of his plea of self-defense.

4. *When the occupant is also the slain and the homicide occurred while he was attempting to eject a trespasser from a part of the premises outside of his habitation.*

Under such circumstances, the right of the occupant to expel the trespasser and to use such force as might be necessary, even to killing him, being limited to the place of his habitation (or perhaps of his curtilage, *State v. Brooks,* 79 S. C., 144; 60 S. E., 518; 17 L. R. A. [N. S.], 483; 128 Am. St. Re., 836; 15 Ann. Cas., 49), it did not exist at the place where the homicide is conceded to have taken place, away from the habitation, away from the curtilage, and at a more remote place on the premises near the road leading from the house to the public highway. The rights of the occupant consisted then only in his immunity from the law of retreat, in case he had slain the trespasser and had entered the plea of self-defense. If he attempted to do what he had no right to do, to kill the trespasser in order to get him off the premises, the right of the trespasser to rely upon the plea of self-defense was unaffected by the fact that the deceased was on his own premises.

We must interpret, for the purposes of this discussion, as was done by the Court in the Brooks Case, *supra,* the evidence most favorable to the defendant. It tends to show that he ran out of the house, and while he secured his gun as he passed by the car, he left the yard and probably would have left the premises if he had not been

pursued by the deceased with a gun in his hand and accompanied by his son, over the protests of his family. If the defendant stopped in the woods near the road, the evidence does not show that it was with a hostile purpose. While the son asserts his efforts to dissuade his father, he admits that when he saw the defendant in the woods he pointed him out to his father, saying, "There he is," as if the game had been located. In this he was confirmed by his sister. The defendant testified that then the deceased raised his gun and leveled it at him, then he shot. fI this be true, the deceased had no right to do this except, not retreating, to defend himself. The jury was told, however, that at that time and place the deceased had the right to raise and level his gun and, if necessary, to kill the defendant—to get him off the premises, putting the defendant in the attitude of bringing on the difficulty and in killing the deceased while he was doing what he had the right to do—practically annihilating his plea of self-defense.

In *State v. Lightsey*, 43 S. C., 114; 20 S. E., 975, the presiding Judge charged the jury:

And on "the land away from his castle he has not the same right there that he has in his home. * * * If a man warns another off his place, and that man comes on it [or refuses to leave, we add], he is guilty of a crime, a misdemeanor, and for that misdemeanor he may be tried in Court."

This was approved by the Court. It is not suggested that he had the right to kill him. It is worthy of note that in the case at bar the defendant had not done an act for which he could even have been prosecuted; as a simple trespass, in the absence of willful malicious injury, or of an entry after notice, is not an indictable offense.

The judgment of this Court is that the judgment of the Circuit Court be reversed, and that the case be remanded to that Court for a new trial.