15099

STATE v. CHRISTENSEN

(9 S. E. (2d), 555)

*Messrs. W. W. Elliott* and *W. Brantley Harvey,* for appellant,

*Hon. Randolph Murdaugh, Solicitor*, for the State.

June 11, 1940.

The opinion of the Court was prepared by the late Mr. Chief Justice Stabler, and is adopted by the present Chief Justice and Mr. Justice Fishburne. Mr. Acting Associate Justice Graydon has written a dissenting opinion as to Exception X, which has been concurred in by Mr. Justice Baker.

The entire Court is in agreement as to the proper disposition of the first nine of the ten exceptions in this case, and what follows thereabout has been submitted by Mr. Acting Associate Justice Graydon:

The defendant above named, A. O. Christensen, was arrested on the 17th day of February, 1939, upon a charge of breaking and entering a house and larceny and the breaking and entering of a house with the intent to commit a misdemeanor. He gave bond for his appearance on the same day and on the 4th of March, 1939, demanded a preliminary hearing, in person, before the magistrate who had issued the warrant. The magistrate informed the defendant that it was then too late to hold a preliminary hearing as the papers had been transmitted to the solicitor. It will be observed that at no time did the defendant make demand for a preliminary hearing in writing nor was his oral demand made ten days before the Court of General Sessions was to meet in Beaufort.

On the 6th of March the Court of General Sessions for Beaufort County met and the defendant was indicted by the Grand Jury for breaking and entering the dwelling house and committing therein the crime of larceny and breaking and entering the dwelling house with the intent to commit therein a misdemeanor, a true bill being returned about midday of March 6, and thereafter the defendant, about 3

o'clock of the same day, was called to trial. At this time a motion for a continuance of the cause beyond the term of Court was made on the ground that the defendant had not been able to retain counsel and was not ready to proceed with the trial. The record discloses that only on the day of the finding of a true bill did the defendant speak to Mr. W. W. Elliott and Mr. W. Brantley Harvey with reference to the trial of his case. This motion was refused by the Court and constitutes the basis of one exception. The case then proceeded to trial at about 4 o'clock p. m., with Mr. Elliott present, but after seven jurors had been drawn, Mr. Elliott renewed the motion for a continuance but this was also refused by the Court and constitutes the basis of a second exception.

The trial proceeded and it developed from the testimony that a colored man named Ben Myers owned certain property in Beaufort, among which was a house on Green Street occupied by L. A. Lotte, a white man. The house was rented from Myers, but after Lotte had been in the house for some time, there appears to have been a dispute about the rent and occupancy and Christensen, the defendant, was called in as agent to handle the property. Christensen went to see Lotte and during that conversation Lotte admitted that he had not paid $6.00 alleged to be due and told Christensen, according to his statement, that he would not pay anything until the roof was fixed. Christensen then, on the 13th of February, 1939, with a distress warrant, he testified, went to the home of Lotte in his absence, raised the window and took from the house certain articles under the alleged distress warrant and left a slip of paper on the property which Lotte received and produced in Court, the exact nature of the slip being undisclosed by the record. Lotte then took a warrant for the defendant and the defendant, on February 25, eight days after the warrant was taken out and twelve days after the alleged taking of the property, advertised the property to be sold on March 13, 1939, at noon at the Chris-

tensen Company's store, which advertisement was produced in the trial of the case.

At the conclusion of the State's case the defendant made a motion for a direction of verdict on the ground that the State had failed to show any crime committed by the defendant. This motion was refused and this refusal is the basis of two other of defendant's exceptions. The case was submitted to the jury, after the defendant put in the evidence on his behalf, and resulted in a verdict of guilty of housebreaking with the intent to commit a misdemeanor, to wit, a trespass and upon this verdict the Judge sentenced the defendant to serve three months' imprisonment, the crime being defined as a felony by the statute and a prison sentence thereunder being mandatory.

The remaining exceptions complain of alleged errors with reference to the charge of the Circuit Judge at the trial of the cause.

Exceptions I and II allege error in the refusal of the trial Judge to grant a continuance in the cause. In considering these exceptions it is proper to remember that the question of the continuance of a case is largely a matter within the discretion of the trial Judge and unless it is shown that there was an abuse of discretion, his ruling on the matter will not be disturbed. The defendant in this case had a considerable time prior to the meeting of Court in which he could have demanded a preliminary hearing in accordance with law. Had he complied with the law and given the written notice prior to ten days before the convening of the Court he would have had the right to a preliminary hearing as a matter of law (we are not passing upon the right of the defendant to have a preliminary hearing where the warrant is taken within the ten-day period), but in this case the defendant made no effort to secure such hearing until two days before the convening of the Court of General Sessions and at that time the magistrate properly informed him that his request came too late. At the trial of the case the defend-

ant was insistent that this failure to secure a preliminary hearing was a sufficient basis, coupled with the fact that he had not secured the services of a lawyer, to require the Judge to grant a continuance. It is the duty of every defendant when placed under bond for the Court of General Sessions to prepare for the trial of the case in accordance with law and in the absence of some extraordinary circumstances or legal reason he can be required to go to trial at such time the Court directs. In many counties the Court meets seldom and only for a short time and it is imperative that the Judges expedite the business of the Court with all reasonable speed. At this term the defendant's case was reached as the last case for trial on Monday afternoon of the Court and was apparently tried in its regular place on the calendar.

The second motion for a continuance was made by Mr. Elliott, the attorney for Mr. Christensen, on practically the same grounds as made by the defendant personally and this also was refused. The refusal of the continuance being a matter largely within the discretion of the trial Judge and there being no evidence of an abuse of discretion in this case, the same does not constitute error and these exceptions are, therefore, overruled.

Exceptions III and IV charge error on the part of the Circuit Judge in failing to direct a verdict of not guilty at the conclusion of the State's case on the ground as set forth in Exception III, that there was no evidence of any intent on the part of the defendant to commit an unlawful trespass after entry and Exception IV, restating the same principle of law with the additional reason stated that the defendant had a right to go upon the property for past-due rent under a distress warrant.

These two exceptions are interrelated and will be disposed of together.

This Court has held in the case of *State v. Clark*, 85 S. C., 273, 67 S. E., 300, that where a defendant is found guilty of housebreaking only that such verdict will not stand as the

mere breaking and entering a house is not a crime as defined in what is now Section 1139. In this case, however, the defendant was convicted of breaking and entering with the intent to commit a misdemeanor, to wit, a trespass, and it shall be our inquiry, therefore, as to whether the acts of the defendant constitute an unlawful trespass upon the property then in possession of the tenant, Lotte. In the case of *State v. Bradley,* 126 S. C., 528, 120 S. E., 240, in speaking of the question of trespass, the Court states that a simple trespass in the absence of a willful, malicious entry or of an entry after notice, is not an indictable offense, but in the *Bradley case* the Court was speaking of the entry of one upon the land of another. The Court quotes with approval from the case of *State v. Lightsey,* 43 S. C., 114, 20 S. E., 975, where it is held that if one warns another off of his place and the person so warned comes on the property or refuses to leave it, he is guilty of a crime, a misdemeanor, and for that misdemeanor he may be tried in Court. It will be seen that the *Lightsey case* refers to where the defendant is warned to stay off of another's land and this, of course, would constitute trespass after notice.

There is still another line of cases which gives to the landlord or his agent the right to re-enter and take possession of his property after the tenancy is terminated. In the case of *Barbee v. Winnsboro Granite Company,* 190 S. C., 245, 2 S. E. (2d), 737, the Court sustains a direction of verdict where the landlord re-entered and took possession of the property after the tenant had been away for a considerable period of time and had paid no rent for the property. The basis of this decision, however, is the fact that the landlord, after reasonable diligence, could not locate the tenant to dispossess him and it was a reasonable inference that the tenant had abandoned the premises.

Another case which is much stronger is that of *Rush v. Aiken Manufacturing Company,* 58 S. C., 145, 36 S. E., 497, 499, 79 Am. St. Rep., 836, where the landlord, through

an agent, after the termination of the tenancy, entered in upon the property and took possession thereof. The Court held that in the absence of a trespass upon the person or personal property of the tenant the landlord was within his rights in making such entry.

This Court, however, has held that in the levying of a distress warrant a person cannot break the house in order to make an entry and, further, that in order to levy a distress warrant the landlord or his agent is required to get peaceable possession of the property levied upon. *Jones v. Parker,* 81 S. C., 214, 62 S. E., 261.

If, therefore, the defendant in this case broke and entered into the dwelling house of the tenant for the purpose of securing possession of property under the distress warrant which was required to be taken in a peaceable manner, he is guilty of a trespass and an invasion of the rights of the tenant unwarranted in law. It was for the jury to say whether such breaking and entry under the circumstances constituted a crime under Section 1139 and the finding of the jury on this issue will not be disturbed by this Court.

These exceptions are, therefore, overruled.

Exception V alleges error on the part of the presiding Judge in instructing the jury with reference to the matter of housebreaking with intent to steal, the contention of appellant being that that count having been withdrawn, the illustration set forth in that portion of the charge was inapt and prejudicial. The learned trial Judge was attempting to explain to the jury the difference between housebreaking and larceny and housebreaking with the intent to commit a crime of lesser degree. Counsel for appellant contends that this count had been withdrawn from the jury before the charge, but the record shows that after the conclusion of the charge Mr. Murdaugh, the solicitor, informed the Court that the count had been withdrawn and the Court stated that a *nolle prosequi* had been entered. Under these

circumstances the charge was proper but it would not have been prejudicial if only the second count had been before the Court. Often in cases of murder where the solicitor only asks for a verdict of guilty of manslaughter the trial Judge defines and explains the crime of murder to differentiate it from the lesser degree of homicide, manslaughter.

Exception VI alleges practically the same error as set forth in Exception V and what has been said in the disposition of that exception is applicable as to Exception VI.

Exception VII alleges error on the part of the Circuit Judge in failing and refusing to charge that if the defendant entered under a distress warrant for the purpose of distraining for past-due rent, he could not be convicted under Section 1139. There is no doubt that the breaking and entering alone does not constitute a crime as has been aptly said in the case of *State v. Clark, supra,* but such an instruction in this case would have been improper for it was for the jury to say whether in going in the house lor the alleged purpose of distraining for past-due rent the defendant acted in accordance with law and whether his entry and subsequent acts constituted a criminal trespass upon the property of the tenant.

Exception VIII alleges error in that his Honor charged the jury with reference to an entry upon the premises without process of law. The Judge charged the jury in effect that the breaking and entering without a distress warrant would constitute a crime and this charge was more favorable to the defendant than he was entitled to for the reason that even with a distress warrant the defendant had no right to break and enter the property for the purpose of the levying of the distress warrant. The proper legal remedy for the defendant was, upon being unable to obtain peaceable possession of the property, to secure a claim and delivery or other legal process authorizing a proper officer to enter the premises.

Exception IX alleges error on the part of the Circuit Judge in charging the jury with reference to the presence of closed doors and locked windows as notice to the world that entry is forbidden and further that if one breaks and goes into the property to do damage or commit a breach of peace or commit some unlawful act, that he would be guilty of a crime under Section 1139. This was a correct statement of the law and we see no error in the instruction of the Judge for if a person goes into the dwelling house of another for the purpose of doing damage, committing a breach of the peace or doing an unlawful act after he gets in, certainly this would be a violation of Section 1139.

Exception X is as follows: "That his Honor, the presiding Judge, erred in charging the jury as he did, the error being that the entire charge to the jury by his Honor was indefinite, misleading and confusing to the minds of the jury as to the law concerning the crime of which the defendant was charged, to wit, the crime of housebreaking to commit an unlawful trespass."

In the first place, this exception is too general for consideration. It is true that where the death sentence is imposed, this Court has often sanctioned the practice of reviewing the trial without regard to technical rules (*State v. Williams*, 166 S. C., 63, 164 S. E., 415), but no such case is here presented. *State v. Mahaffey*, 125 S. C., 313, 118 S. E., 623, cited and relied upon by appellant, lends no aid or comfort to his position. In that case the defendant was convicted of robbery, grand larceny and simple assault. No motion for a directed verdict was made; a motion for a new trial was entered, but not argued. The defendant then changed attorneys, and an appeal was taken to this Court. An exception alleging that the evidence did not support the verdict was sustained in the following language: "If the original attorney of the appellant was representing him, we would dismiss the appeal for noncompliance with the rules of Court;

but, in order that substantial justice may be done in the instant case, under the peculiar facts and circumstances, *and not to be understood as a precedent in the future,* we will remand the case for a new trial." (Italics added.)

In the second place, we find no reversible error as ■ contended. In fact, the special reason suggested for the sustaining of the exception is not emphasized in the brief of appellant's counsel. During the trial of the case, Mr. Elliott, an attorney, sat with the defendant in an "advisory capacity." He also made a motion for a continuance, asked that certain testimony be stricken from the record, and at the proper time made and argued a motion for a directed verdict. This is referred to merely for the purpose of showing that Mr. Elliott rendered the defendant substantial assistance. Moreover, it appears from the record that the appellant himself, who examined and cross examined the witnesses, is a man of education and intelligence. He, therefore, in these circumstances, was not entitled to any special favor at the hands of the Court. Despite this fact, however, the fair trial Judge was careful to see, more than ordinarily required, that all of the rights of the defendant were fully protected. The Court permitted him, when testifying on his own behalf, to give his version of the matter in his own way, overruling all objections of the solicitor that the witness was violating the rules of evidence.

On cross examination of the defendant, the solicitor asked him this question, which was not objected to:

"Q. Did you have any distress warrant from the magistrate? A. No, sir."

The defendant testified that he had collected rent for a good many people and had been very successful in doing so. He also brought out from the witness, Lotte, that people had had him, when he was a magistrate, to issue distress warrants for rent, and asked him whether he, the defendant, had not brought numerous distress warrants to him. It is thus seen that the appellant himself was the first to refer

to the matter of a magistrate's issuing distress warrants, and no doubt it was this fact that suggested the question which the solicitor asked him thereabout; but which that officer knew, as a person learned in the law, he should not have asked. In the circumstances detailed, however, the appellant has no good reason to complain. Recognizing this to be true, his attorneys have properly stated no exception thereto. We refer to this testimony, therefore, for the reason that it is found necessary to couple it—although not excepted to—with a part of the charge of the trial Judge, in order to reach the conclusion that the appellant is not entitled to a new trial. It is suggested that when so coupled, the tendency would be to direct the jury's mind to an improper explanation of the law. The following is the entire paragraph of the charge, in which is found the alleged objectionable instruction: "With respect to the right of the landlord to subject the property of a delinquent tenant to unpaid rent there is no great complication about those provisions of law. If you have a tenant, he is on your premises, he fails to pay the rent, you have the right to issue what is known as a distress warrant and have your agent appointed who has a right to go upon the premises in a peaceful way—in an orderly way—and divest himself for you of a sufficient quantity of defaulting tenant's property, if he can find it, he takes it, sells it and applies the proceeds to the delinquent's rent and he has a right to do that, but that is acquired in an orderly process."

It will be noted that the trial Judge was here charging the jury as to how a landlord can distrain for unpaid rent. He told them in plain words that if you have a tenant on your premises and he fails to pay the rent, you (the landlord) have the right to issue what is known as a distress warrant, etc. We do not think that the jury, presumed to have been composed of intelligent men, could have possibly mistaken the meaning of the language used, whether considered alone or in connection with the whole charge; or that such language gave to the jury an erroneous impression of the law

when coupled with the alleged objectionable testimony, a question, for the reasons pointed out, not properly before the Court.

The defendant testified that he had a distress warrant in his possession at the time he made the alleged levy and the State made no serious effort to disprove that fact. The real issue under the testimony was whether the appellant, in possessing the property, committed a crime by breaking and entering the house of the tenant. As has been pointed out, "even with a distress warrant, the defendant had no right to break and enter the property for the purpose of the levying of the distress warrant." The Court instructed the jury as follows: "In order to convict the defendant of the charge which is laid in the indictment, that is, breaking with intent to commit an unlawful trespass (the charge), must be proved beyond a reasonable doubt, and there is no charge in there of breaking with intent to steal. * * * Your verdict will be guilty of breaking with intent to commit a trespass, or not guilty."

Furthermore, if the defendant desired the trial Judge to charge the jury more fully in regard to the question about which he complains, he should have duly made request therefor. As this was not done, it may properly be assumed that he and the attorney who was assisting him in his defense were satisfied with the charge as made, as to both its fullness and its clearness. Viewed from any angle, therefore, the appellant has no just cause for complaint. Certainly, it is not made to appear that the trial Judge committed reversible error.

It is argued by counsel for the State that the language of the exception is improper. We do not think so. Under our practice, the wording of the exception is permissible, as it is not intended by the language used to reflect upon the learning or integrity of the presiding Judge —in the present case an able and experienced one.

All exceptions are overruled and the judgment of the Circuit Court is affirmed.

Mr. Justice Baker and Mr. Acting Associate Justice C. T. Graydon concur in part.

Mr. Acting Associate Justice C. T. Graydon (dissenting) :

The original opinion in this case was prepared by me but the majority of the Court disagreed with that part of the opinion which sustained Exception X. Thereafter the late and lamented Chief Justice John G. Stabler adopted all of the writer's opinion· as the majority opinion of the Court, disagreeing, however, with the disposition of Exception X.

The opinion of the former Chief Justice has been adopted ·in toto by the present Chief Justice and Mr. Justice Fishburne, but only in part by Mr. Justice Baker, who agrees with me that Exception X should be sustained. However, since at least three justices must agree on a reversal when the Court is composed of more than three members, the opinion adopted by the present Chief Justice and Mr. Justice Fishburne becomes the prevailing opinion.

Briefly I will give my reasons for not agreeing with the disposition of Exception X. It is true, as set forth in the opinion of ·the Chief Justice, that the exception is general and does not exactly cover the point which should give the defendant a new trial and in my judgment, in a criminal case, every reasonable doubt should be given in his favor both on the trial of the case and on the appeal thereof and it should be the purpose of the Court to·see that he, the defendant, obtains a fair and impartial trial under all of the facts and circumstances.

While the defendant was upon the stand certain questions were directed to him which, to the lay mind, would infer that the defendant should have secured a distress warrant from a magistrate. These questions asked on cross examination would not within·themselves entitle the defendant to a new trial, but in the charge of the learned Judge the expression

is made, "You have a right to issue what is known as a distress warrant and have your agent appointed who has a right to go upon the premises in a peaceable way." Although the charge of the trial Judge was eminently correct in all particulars, it is my opinion that the jury could have properly reached the conclusion that the failure to have a magistrate issue a distress warrant was fatal and thereby be under an erroneous impression of the law.

In a civil case I do not feel that what transpired would be sufficient for a reversal, but in a criminal case the same rule does not apply. Of course, had the trial Judge in his charge informed the jury that it is not necessary that a magistrate issue the distress warrant, the impression which the jury might have formed from the questions asked and the charge of the Judge, would have been corrected. The criminal law should be enforced fearlessly and fairly, but I am of opinion that where there is a question it should be resolved in favor of the defendant and in this case there is a question in my mind and I, therefore, believe that the defendant should be given the benefit of this question and allowed and permitted a new trial.

For the above-stated reasons I respectfully dissent from the prevailing opinion as to the disposition of Exception X.

MR. JUSTICE BAKER concurs.