680 S.E.2d 905

**Ervin McMILLIAN, Petitioner,**

**v.**

**STATE of South Carolina, Respondent.**

**No. 26688.**

Supreme Court of South Carolina.

Submitted April 22, 2009.

Decided July 20, 2009.

482

Appellate Defender Robert M. Pachak, of South Carolina Office of Indigent Defense, of Columbia, for Petitioner.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley E. Elliott, and Assistant Attorney General Brian T. Petrano, all of Columbia, for Respondent.

Justice BEATTY.

Ervin McMillian [1] filed a petition for a writ of certiorari seeking review of an order denying his application for post-conviction relief (PCR). We granted the petition to decide the following question: Was counsel ineffective for advising McMillian that the intent to commit a crime could be inferred from the act of trespassing, such that it would provide a factual basis to support a plea to first-degree burglary? We hold counsel was not ineffective and affirm.

## FACTS

McMillian was charged with first-degree burglary as a result of an incident that occurred in Columbia, South Carolina on April 10, 2004. At approximately 1:00 a.m. on that date, McMillian knocked on the door of the home of Lanelle Hicks and her adult son, Mark Hicks. Lanelle Hicks looked out a window and saw McMillian, so she went to her son's room to wake him. At that point, McMillian's knocking turned into beating on the door, and then he crashed the door open, damaging the door. As soon as McMillian entered the

---

1. Ervin McMillian is also referred to as "Ervin Britton" in various documents in the Appendix.

house, however, Mark Hicks took McMillian back outside and held him there with the assistance of a neighbor until the police arrived.

McMillian subsequently pled guilty to the charge of first-degree burglary. At the plea proceeding, McMillian stated that he "had been drinking and drugging" (with crack cocaine) the night of the incident and that he thought someone was chasing him and trying to kill him. McMillian maintained he knocked on the door of the Hicks home in order to get some help, but he admitted that he pushed the door open to get inside the home. McMillian stated he believed he "was justified in asking for help," but admitted that he "know[s] that [he] did wrong."

In contrast, the solicitor advised the plea judge that according to the victims they never heard McMillian ask for help and "he never asked for the police. All he did was kick their door in and rip the door jam off." Earlier in the plea proceeding, the solicitor noted that McMillian has a criminal record dating back to 1977 that includes prior convictions for, among other things, housebreaking, malicious injury to real property, second-degree burglary, and strong armed robbery.

In a separate sentencing proceeding, McMillian again admitted he "pushed the door open," but maintained he did not "go there with the intent to take anything." The plea judge sentenced McMillian to nineteen years in prison for first-degree burglary. No direct appeal was taken.

McMillian filed a PCR application. At the PCR hearing, McMillian asserted, among his claims, that his attorney did not explain to him that the State must prove not only that he had broken into the victims' home, but that he did so with the intent to commit a crime. He maintained he would have exercised his right to go to trial and would not have pled guilty if his attorney had properly advised him that there was no evidence to support an inference of his intent to commit a crime.

McMillian's counsel testified that she believed there was evidence of intent to commit a crime and that she had advised McMillian of all the elements of first-degree burglary. Counsel stated, "I explained that to Mr. McMillian, that the intent could be inferred from the trespassing because it was not his

property, and he was illegally on someone else's property, and he broke the door down of—pushed the door open. I said that it could be inferred from—trespass could be with the intent to commit a crime. Trespass could be inferred from these actions."

Counsel stated she hired a private investigator to look into McMillian's story that he had been chased by someone and, "[a]fter a period of time ... he [McMillian] said the person kind of existed in his head, I guess." She said a neighbor saw McMillian "looking in the windows of the home prior to him just bursting in the door." Thus, she could not substantiate McMillian's claim that he believed someone was chasing him.

McMillian's PCR attorney contended McMillian's assertion that he was high on drugs and thought he was being chased when he went to the home did not support a charge of first-degree burglary, as he had no intent to commit a crime, and plea counsel erred in advising him that intent to commit a crime could be inferred from an act of trespass.

The PCR judge denied McMillian's application and found the allegation that there was no factual basis to support a plea to first-degree burglary was without merit. The judge noted: "Counsel testified that had she gone to trial, intent to commit a crime could be inferred from the act of trespassing. Applicant testified that he did not own the house and did not have permission to enter the house. Further, the evidence suggested that he physically broke the door open to enter. Accordingly, this allegation is denied and dismissed."

McMillian's attorney submitted a *Johnson*[2] petition for a writ of certiorari to review the PCR order. This Court directed the parties to brief the following issue: Was counsel ineffective in advising McMillian that the intent to commit a crime could be inferred from the act of trespassing, such that it would provide a factual basis to support a plea to first-degree burglary?

## LAW/ANALYSIS

The Sixth Amendment to the United States Constitution guarantees a defendant the right to effective assistance of

---

**2.** *Johnson v. State*, 294 S.C. 310, 364 S.E.2d 201 (1988).

counsel. U.S. Const. amend. VI; *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Lomax v. State,* 379 S.C. 93, 665 S.E.2d 164 (2008).

The United States Supreme Court has announced a two-pronged test to establish ineffective assistance of counsel by which a PCR applicant must show (1) counsel's performance was deficient, and (2) the deficient performance prejudiced the defendant. *Strickland,* 466 U.S. at 687, 104 S.Ct. 2052; *Cherry v. State,* 300 S.C. 115, 386 S.E.2d 624 (1989). Under the second prong, the PCR applicant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052.

The two-part test adopted in *Strickland* also "applies to challenges to guilty pleas based on ineffective assistance of counsel." *Hill v. Lockhart,* 474 U.S. 52, 58, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). In the context of a guilty plea, the applicant "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59, 106 S.Ct. 366. "The longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Id.* at 56, 106 S.Ct. 366 (quoting *North Carolina v. Alford,* 400 U.S. 25, 31, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970)).

"In a PCR proceeding, the burden is on the applicant to prove the allegations in his application." *Lounds v. State,* 380 S.C. 454, 460, 670 S.E.2d 646, 649 (2008). "In resolving PCR issues relating to guilty pleas, it is proper to consider the guilty plea transcript as well as the evidence at the PCR hearing." *Pelzer v. State,* 381 S.C. 217, 222, 672 S.E.2d 790, 792 (Ct.App.2009).

"This Court will uphold the findings of the PCR judge when there is any evidence of probative value to support them." *Suber v. State,* 371 S.C. 554, 558, 640 S.E.2d 884, 886 (2007). "This Court will reverse the PCR judge's decision when it is controlled by an error of law." *Id.* at 558–59, 640 S.E.2d at 886.

■    First-degree burglary is a statutory offense in South Carolina that is defined as follows: "A person is guilty of burglary in the first degree if the person enters a dwelling without consent *and with intent to commit a crime* in the dwelling, *and* " any one of several enumerated aggravating circumstances exists. S.C.Code Ann. § 16–11–311(A) (2003) (emphasis added). In this case, the aggravating circumstance is "the entering or remaining occurs in the nighttime." *Id.* § 16–11–311(A)(3).

On review, McMillian asserts he received ineffective assistance of counsel because "[t]here is ambiguous precedent on whether one can infer intent [to commit a crime] from trespassing."

This Court has previously held that for a charge under the old statute of housebreaking, i.e., breaking and entering into a dwelling with the intent to commit a felony or a crime of a lesser grade, found in section 1139 of the South Carolina Code of 1932, the element of intent to commit a crime of a lesser grade could be satisfied by a trespass. *See State v. Christensen,* 194 S.C. 131, 9 S.E.2d 555 (1940). In *Christensen,* "the defendant was convicted of breaking and entering with the intent to commit a misdemeanor, to wit, a trespass" after the defendant, who was an agent of the landlord, went into a tenant's dwelling with the specific intent of taking personal property to sell for overdue rent. *Id.* at 138, 9 S.E.2d at 558.

The *Christensen* Court cited a prior decision that stated the mere breaking and entering of a house is not a crime under the statute prohibiting the breaking and entering into a dwelling with the intent to commit a felony or a crime of a lesser grade,[3] but found that if Christensen were guilty of a trespass,

---

**3.** The *Christensen* Court cited *State v. Clark,* 85 S.C. 273, 67 S.E. 300 (1910), which provides in relevant part as follows:

The first count of the indictment is laid under section 145 of the Criminal Code, which is as follows: "Every person who shall break and enter, or who shall break with intent to enter, in the day time, any dwelling house or other house, or who shall break and enter, or shall break with intent to enter, in the night time, any house, the breaking and entering of which would not constitute burglary, with intent to commit a felony or other crime of a lesser grade, shall be held guilty of a felony," etc. Under this statute, the mere *breaking* of a house is not a crime, nor is the mere *breaking and entering* of a house, or the mere *breaking with intent to enter* a house any crime. It

"[i]t was for the jury to say whether such breaking and entry under the circumstances constituted a crime under Section 1139 and the finding of the jury on this issue will not be disturbed by this Court." *Id.* at 137–39, 9 S.E.2d at 558–59.

McMillian argues counsel was ineffective in advising him that intent to commit a crime could be inferred from a trespass. We disagree. In its general sense, to "trespass" is "to make an unwarranted or uninvited incursion" onto the property of another. *Webster's Third New International Dictionary* 2439 (2002).[4]

Certainly, a jury would have been free to disbelieve McMillian's version of events and find that he had the intent to commit a crime based on his conduct at the time of this offense. In *State v. Haney*, 257 S.C. 89, 91, 184 S.E.2d 344, 345 (1971), this Court observed that "proof of intent necessarily rests on inference from conduct." We noted the unexplained breaking and entry of a dwelling in the night is itself evidence of intent to commit larceny:

> When the building entered is a dwelling house, the weight of authority holds that the unexplained breaking and entry in the night is itself evidence of intent to commit larceny rather than some other crime. "The fundamental theory, in the absence of other intent or explanation for breaking and entering, is that the usual object or purpose of burglarizing

---

> is only when there is a breaking and entering, or a breaking with intent to enter, *"with intent to commit a felony, or other crime of a lesser grade"* that the crime denounced by the statute is complete. *Id.* at 277–78, 67 S.E. at 302 (emphasis in original).

4. In contrast, an unlawful trespass, or what is commonly called trespass after notice, is distinguishable and is prohibited by section 16–11–620 of the South Carolina Code, which provides as follows:

> Any person who, without legal cause or good excuse, enters into the dwelling house, place of business, or on the premises of another person after having been warned not to do so or any person who, having entered into the dwelling house, place of business, or on the premises of another person without having been warned fails and refuses, without good cause or good excuse, to leave immediately upon being ordered or requested to do so by the person in possession or his agent or representative shall, on conviction, be fined not more than two hundred dollars or be imprisoned for not more than thirty days.

> S.C.Code Ann. § 16–11–620 (2003).

488

a dwelling house at night is theft." 13 Am.Jur.2d Burglary, Sec. 52 (1964).

*Id.* at 91–92, 184 S.E.2d at 345. A similar view was expressed by the Supreme Court of Wyoming, which stated:

The law is well settled and widespread that where one breaks into the property of another in the nighttime, an inference may be drawn that he did so with the intent to commit larceny. A reasonable mind recognizes that people do not usually break into and enter the building of another under the shroud of darkness with innocent intent and that the most usual intent is to steal.... Direct evidence to prove intent is not necessary.... Proof of intent is not a precise process.

*Mirich v. State,* 593 P.2d 590, 593 (Wyo.1979).

Moreover, even if we interpret McMillian's argument as being that counsel was ineffective because she referred to unlawful trespass and he did not meet the elements of an unlawful trespass because there was no entry after notice, we find there is no merit to this allegation. There was notice against entry in this case because, as we noted in *Christensen,* "the presence of closed doors and locked windows [i]s notice to the world that entry is forbidden." *Christensen,* 194 S.C. at 141, 9 S.E.2d at 560.

McMillian was facing a possible sentence of life in prison[5] and, based on the colloquy in the transcript, it appears he had hoped for a suspended sentence of less than fifteen years. When that did not occur, he brought this PCR action. We hold that the fact that counsel advised McMillian that a jury *could* disbelieve his version of events and *could* find that he entered the dwelling without consent and with the intent to commit a crime was not erroneous advice and counsel was not deficient in her representation. Accordingly, the PCR judge did not err in denying McMillian's PCR application.

## CONCLUSION

Based on the foregoing, the order of the PCR judge is **AFFIRMED.**

---

**5.** First-degree burglary is a felony punishable by life imprisonment, although the court, in its discretion, may sentence a defendant to a term of not less than fifteen years. S.C.Code Ann. § 16–11–311(B) (2003).

TOAL, C.J. and KITTREDGE, J., concur.

PLEICONES, J., concurring in a separate opinion in which WALLER, J., concurs.

Justice PLEICONES.

I agree with the majority that counsel was not ineffective in advising petitioner that a jury could find the requisite intent to commit a crime for purposes of burglary from his trespass into the Hicks' home. I write separately, however, as I do not join the discussion of statutory "trespass after notice" as I believe it is not implicated by these facts. *See State v. Bradley,* 126 S.C. 528, 120 S.E. 240 (1923); *State v. Cross,* 323 S.C. 41, 448 S.E.2d 569 (Ct.App.1994) (common law trespass discussed).

WALLER, J., concurs.